AMSBARY, Appellant,

v.

BRUMFIELD et al., Appellees.

[Cite as *Amsbary v. Brumfield,* 177 Ohio App.3d 121, 2008-Ohio-3183.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 07CA12.

Decided June 19, 2008.

122

---

James R. Henry, for appellant.

Halliday, Sheets & Saunders and Mark E. Sheets, for appellees.

HARSHA, Judge.

{¶ 1} Gordon K. Amsbary appeals the trial court's judgment reforming a deed based upon mutual mistake and denying his claim for an injunction to compel Irvin H. Brumfield and Glenda F. Brumfield, co-trustees of the Glenda F. Brumfield living trust, to remove an encroachment upon his land or to award him damages. He asserts that the Brumfields' building and driveway clearly encroach upon his land and that the court should have ordered them to remove the encroachments or should have awarded him damages. However, the trial court reformed the deed so as to exclude the portion of the property that included the building and driveway. Therefore, after reformation, Amsbary lacks any claim that the Brumfields' building or driveway sits upon his property. Thus, as long as the trial court's decision reforming the deed and finding a mutual mistake was not against the manifest weight of the evidence (which is the subject of Amsbary's second assignment of error), Amsbary's argument is meritless. As we explain below, the trial court's decision reforming the deed based upon mutual mistake is not against the manifest weight of the evidence.

{¶ 2} Next, Amsbary contends that the trial court erred by considering the Brumfields' claim for deed reformation based upon mutual mistake when they failed to plead it. This argument is baseless. The record shows that the Brumfields raised deed reformation and mutual mistake in an amended counterclaim.

{¶ 3} Amsbary further asserts that the trial court's decision reforming the deed because a mutual mistake occurred in the deed preparation is against the manifest weight of the evidence. The evidence shows that at the time of the real estate transaction in 1986, the Brumfields did not intend to convey, and Amsbary did not intend to purchase, any part of the building or driveway. Thus, to the extent the deed conveyed part of the building and driveway to Amsbary, a mutual mistake occurred. Because the record contains some evidence to support the trial court's decision, it is not against the manifest weight of the evidence. Accordingly, we overrule Amsbary's two assignments of error and affirm the trial court's judgment.

## I. FACTS

{¶ 4} In November 1986, the Brumfields transferred part of their property to Amsbary. The deed described the property as: "Beginning in the centerline of State Route # 7, which is Westerly along said centerline 120 feet from the intersection of State Route # 7 and the East line of Lot 1199; thence Easterly with the centerline of said road 120 feet; thence South along the East line of Lots 1199 and 1200 to the low water mark of the Ohio River; thence Westerly 120 feet

along said low water mark to a point which is South of the point of beginning; thence North, parallel with the East line of Lots 1200 and 1199 to the place of beginning, containing ¾ of an acre, more or less."

{¶ 5} Nearly 20 years later, Amsbary filed a complaint against the Brumfields, alleging that the Brumfields' building and driveway extends onto his property by approximately 30 feet. He requested the court to order the Brumfields to remove the encroachment or to award him damages. The Brumfields counter-claimed for reformation of the deed based upon mutual mistake.

{¶ 6} At trial, the parties presented conflicting evidence. Amsbary testified that the Brumfields encroached upon his property after he purchased it, while the Brumfields asserted that they had not made any changes to the dimensions of the building or any other areas since Amsbary purchased the adjoining lot.

{¶ 7} The trial court found that the Brumfields proved mutual mistake and were entitled to have the deed reformed. The court noted that the Brumfields admitted that under the original deed description, their driveway and building encroach upon Amsbary's land, but they testified that they never intended to transfer this part of the land to Amsbary. Moreover, Amsbary testified that he did not intend to purchase part of the building and driveway. The court found that Amsbary failed to offer any evidence other than his unsubstantiated testimo-ny to support his claim that the Brumfields erected any additions to the building or driveway subsequent to his purchase. The court further found it significant that the parties had no problems or disagreements regarding the property line until 2005, when Amsbary had his land surveyed. The court additionally discred-ited Amsbary's testimony regarding his version of the property transaction and subsequent events. The court thus ordered the deed reformed to read:

A certain tract of land situate in the State of Ohio, Gallia County, City of Gallipolis, on the Ohio River, near the mouth of Mill Creek, and being more particularly bounded and described as follows:

Beginning at the northeast corner of the lands formerly owned by Glenda F. Brumfield and Irvin H. Brumfield, Trustees of the Glenda F. Brumfield Living Trust, (O.V. 312, Pg. 39), from which an OOOT concrete reference monument (found), bears: South 82 deg. 11' 33" West 148.94 feet, and a second OOOT concrete reference monument (found), bears: North 72 deg. 19' 03" East 189.84 feet, and being located in the centerline of the right-of-way of Ohio State Route No. 7, as shown on sheet No. 124/139 for project No. 10583(0); thence, leaving the centerline of the said Route, and with the east line of the lands formerly owned by the said Trust,

Due South, passing an iron pin with an orange plastic cap stamped with "P.M.R. PS 6196" (found), at 27.06 feet, in all 289.00 feet to the southeast

corner of the lands of the said Trust; thence, leaving the east line of the lands of the said Trust, and with the south line of the lands of the said Trust,

South 77 deg. 30' 00" West 56.06 feet; thence, leaving the south line of the lands of the said Trust, and severing the lands of the said Trust,

North 09 deg. 26' 45" West 270.44 feet to a point on the north line of the lands of the said trust, and being in the centerline of the said Route; thence, with the north line of the lands of the said Trust,

North 70 deg. 52' 41" East 104.90 feet to the beginning, containing 0.503 acres, more or less * * *.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Amsbary raises two assignments of error:

First Assignment of Error:

The lower court erred by not ordering that defendants-appellees' building be ordered removed since it encroaches upon plaintiff-appellant's property.

Second Assignment of Error:

The lower court erred by reforming the deed since no mutual mistake of fact occurred, nor was it pled.

## III. DEED REFORMATION

{¶ 9} In his first assignment of error, Amsbary asserts that the trial court erred by failing to conclude that the Brumfields' building and concrete driveway constitute an encroachment on his property and by failing to issue an injunction ordering the Brumfields to remove it. Amsbary's first assignment of error rests upon the premise that the building and driveway, in fact, sit on his property. However, the trial court reformed the deed to exclude the part of the property originally deeded to Amsbary that contains the building and driveway. The trial court's decision reforming the deed is the subject of Amsbary's second assignment of error. Therefore, because the resolution of Amsbary's first assignment of error turns upon our resolution of his second assignment of error, we first will address his second assignment of error.

{¶ 10} In his second assignment of error, Amsbary first contends that the trial court erred by reforming the deed based upon mutual mistake when the Brumfields failed to plead it. Alternatively, Amsbary essentially argues that the trial court's judgment reforming the deed is against the manifest weight of the evidence. He asserts that the Brumfields failed to produce sufficient evidence to prove a mutual mistake.

## A. STANDARD OF REVIEW

{¶ 11} We will not reverse a trial court's judgment as being against the manifest weight of the evidence as long as some competent, credible evidence supports it. See, e.g., *Sec. Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 492 N.E.2d 438; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. See, e.g., *Bugg v. Fancher*, Highland App. No. 06CA12, 2007-Ohio-2019, 2007 WL 1225734, at ¶ 9. Furthermore, we must make every reasonable presumption in favor of the trier of fact's findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

## B. FAILURE TO PLEAD

{¶ 12} Initially, we flatly reject Amsbary's argument that the Brumfields failed to plead reformation due to mutual mistake. The Brumfields filed an amended counterclaim that contained allegations of mutual mistake and that requested reformation. Therefore, Amsbary's contention that they failed to plead it is meritless.

## C. MUTUAL MISTAKE

{¶ 13} Next, we disagree with Amsbary that the Brumfields failed to present sufficient evidence to prove a mutual mistake occurred that entitled them to a deed reformation. In a similar case, *Patton v. Ditmyer*, Athens App. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, 2006 WL 3896780, vacated on other grounds on April 12, 2007,[1] we discussed deed reformation based upon mutual mistake when the original deed conveyed property that the parties obviously did not intend to be part of the contract and stated:

Equity allows reformation of a written instrument when, due to a mutual mistake on the part of the original parties to the instrument, the instrument does not evince the parties' actual intention. See *Mason v. Swartz* (1991), 76 Ohio App.3d 43, 50, 600 N.E.2d 1121. "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof * * *." *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 286 [31 O.O.2d 557], 209 N.E.2d 194. "[R]eformation of a contract is appropriate

---

1. Our decision vacating *Patton* is not available in electronic medium and, therefore, we are unable to provide additional citation material.

where the written agreement does not accurately reflect the true understanding of the parties, and it is used to effectuate their true intent." *Concrete Wall Co. v. Brook Park* (Feb. 26, 1976), Cuyahoga App. Nos. 34054, 34090, and 34171 [1976 WL 190697], citing *Greenfield v. Aetna Cas. Ins. Co.* (1944), 75 Ohio App. 122 [30 O.O. 427], 61 N.E.2d 226. "The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement." *Concrete Wall Co.*

A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. See *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797, paragraph one of the syllabus; *Justarr Corp. v. Buckeye Union Ins. Co.* (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345. Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. See *In re Haynes* (1986), 25 Ohio St.3d 101, 104 [25 OBR 150], 495 N.E.2d 23.

To be entitled to deed reformation based upon a mutual mistake, the mistake must be material. See *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 352–353, 632 N.E.2d 507. "A mistake is material to a contract when it is 'a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' 1 Restatement of the Law 2d, Contracts (1981), 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake." Id. Reformation of a deed is available upon a showing that both parties were mistaken as to what was being conveyed. See *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797.

In *Castle v. Daniels* (1984), 16 Ohio App.3d 209 [16 OBR 224], 475 N.E.2d 149, the court concluded that reformation of the deed was appropriate when the evidence showed that the parties were mutually mistaken as to the property conveyed. In *Castle,* the appellees conveyed a lot to the appellants by warranty deed. The deed described the property conveyed as the entire lot, which included a hay field in the northeast corner of the lot upon which sat a barn. The appellees asserted that the parties did not intend the real estate transaction to include the hay field and barn. The deed also described property that was owned by a third party, Lucy McClung. The appellants conceded that the parties did not intend her property to be part of the transaction.

A survey plat showed that the hay field and barn were not part of the lot, and neither was McClung's property. Testimony existed that the appellants were aware of the lot boundaries. The appellees stated that they showed the appellants the boundaries before closing the real estate transaction.

The court determined that the evidence showed that the parties were mutually mistaken as to the land that the deed conveyed. The court recognized that the appellants disputed that a mutual mistake occurred, but stated: " '[T]he mere fact that the parties at the time of trial testify differently as to what their agreement was does not necessarily mean that there was no agreement between them, nor does it necessarily mean that they were not mutually mistaken concerning the expression of their agreement in the instrument; in this respect, it has been pointed out that if the fact alone that the parties testify differently at the trial would prevent a finding that there was an agreement between the parties, a court could never determine whether there was a contract in a lawsuit where the parties disagree and testify differently.' 13 Ohio Jurisprudence 3d (1979) 363, Cancellation, etc. of Instruments, Section 76." Id. at 212 [16 OBR 224, 475 N.E.2d 149]. The court thus affirmed the trial court's judgment reforming the deed based upon mutual mistake.

In *Dornbirer v. Conrad* (Nov. 20, 2000), Perry App. No. 99CA26 [2000 WL 1751264], the court concluded that deed reformation was the appropriate remedy when the deed conveyed land that was not intended to be included as part of the real estate transaction but was nonetheless included in the deed. In *Dornbirer,* the deed conveyed 3.5 acres that was not intended to be part of the purchase agreement. See, also, *Kevern v. Kevern* (1917), 11 Ohio App. 391 [1917 WL 1102] (finding that the deed mistakenly conveyed land that the parties never intended to be part of the real estate transaction and stating "[i]t is inconceivable to us that [the buyer] should have intended to buy and [the seller] to sell a lot of land with a house partially on it").

In the case at bar, the evidence indisputably and clearly and convincingly shows that the parties were mutually mistaken as to the land conveyed. Thus, the trial court did not improperly enter summary judgment in the Arnolds' favor. The evidence unequivocally shows that the Arnolds did not intend to sell Ditmyer's home or the land upon which it sits. Her home and property were not offered for sale to the Pattons and the Pattons did not view it, and could not have reasonably viewed it, as part of the real estate transaction. The Pattons admit that they did not intend to purchase Ditmyer's residence. Only after the fact, i.e., after the land survey was complete and after they discovered that Ditmyer's home sat on a lot named in the deed that the Arnolds executed, did they claim an interest in Ditmyer's property. At the time that the deed was executed, the Pattons never believed that the deed conveyed Ditmyer's home or the land upon which it sits. The parties' "outward manifestations" show that they "believed that the intended conveyance was different from that contained in the deed." See *Castle,* 16 Ohio App.3d at 213 [16 OBR 224 475

N.E.2d 149]. The parties did not intend Ditmyer's house and the land upon which it sits to be part of the real estate transaction.

Id. at ¶ 27–34.

{¶ 14} A similar analysis applies here. The evidence shows that Amsbary did not intend to purchase, and the Brumfields did not intend to sell, the land upon which the building and driveway sit. The Brumfields testified that they pointed out the boundary line to Amsbary before purchase and that they did not negotiate the building or driveway as part of the purchase price. Amsbary made no claim to the land until nearly 20 years later, when he had the land surveyed. Only then did he learn that the deed description was improper and seek to claim land that he had not previously thought was included in the original purchase. We acknowledge that Amsbary presented conflicting testimony concerning whether the alleged encroachments existed at the time of purchase and where Mr. Brumfield explained the boundary line sat. However, the trial court specifically discredited his testimony. We will not second-guess its credibility assessment. In applying the "some competent credible evidence" standard, we should not reverse a judgment merely because the record contains evidence that could reasonably support a different conclusion. It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact-finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to ensure that the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation. Thus, the trial court's decision finding that a mutual mistake occurred in preparing the deed and that the Brumfields were entitled to have the deed reformed is supported by the manifest weight of the evidence.

{¶ 15} Accordingly, we overrule Amsbary's second assignment of error.

## IV.  ENCROACHMENT

{¶ 16} In his first assignment of error, Amsbary asserts that the trial court erred by failing to conclude that the Brumfields' building and driveway should be removed because they cross the common boundary. He contends that the building and driveway constitute an encroachment upon his property.

{¶ 17} Because the trial court reformed the deed to exclude the portion of the building and driveway mistakenly conveyed in the original deed, Amsbary's argument that the Brumfields' building and driveway encroach on his property is meritless. The trial court found that Amsbary could not reasonably have believed that the property transaction included the part of the building and driveway that the subsequent land survey revealed was within his property

boundaries. The trial court discredited Amsbary's testimony and instead found that Mr. Brumfield pointed out the boundary line to Amsbary before he purchased the land and that the boundary did not include any part of the building or driveway. Consequently, Amsbary's argument that the building and driveway constitute encroachments is meritless.

{¶ 18} Accordingly, we overrule Amsbary's first assignment of error and affirm the trial court's judgment.

Judgment affirmed.

ABELE, P.J., and MCFARLAND, JJ., concur.