[Cite as *VanMeter Farms, Inc. v. Am. Grain Internatl., Inc.*, 2011-Ohio-423.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

VANMETER FARMS, INC., et al.,     :
                                  :
    Plaintiffs-Appellees,     :     Case No. 10CA802
                                  :
    vs.                       :
                                  :     **Released: January 20, 2011**
AMERICAN GRAIN                    :
INTERNATIONAL, INC.,              :     <u>DECISION AND JUDGMENT</u>
                                  :     <u>ENTRY</u>
    Defendant-Appellant.      :

_____

<u>APPEARANCES:</u>

James L. Mann, Mann and Preston, LLP, Chillicothe, Ohio, for Defendant-Appellant.

Thomas M. Spetnagel and Paige J. McMahon, Spetnagel and McMahon, Chillicothe, Ohio, for Plaintiffs-Appellees.

_____

McFarland, P.J.:

    **{¶1}**    Defendant-Appellant, American Grain International, Inc. ("AGI") appeals from a decision of the Pike County Court of Common Pleas. The trial court found in favor of Plaintiffs-Appellees, John Carroll and Vanmeter Farms, Inc., ("Vanmeter") in their breach of contract action against AGI. AGI claims the trial court's decision that AGI had breached the contract was against the manifest weight of the evidence. However, because there is some competent and credible evidence in the record to

support the trial court's decision, we overrule AGI's manifest weight

argument and affirm the decision of the court below.

## I. Facts

{¶2}     Appellant, AGI, is a corporation that buys agricultural

products from producers and sells it to third parties, acting as a middleman

between farmers and markets.  John Carroll, Appellee, is a farmer.  In

addition to farming his own land, he also farms land owned by other entities.

One such entity is Vanmeter Farms, the other appellee in this case.  During

the 2002 growing season, John Carroll grew popcorn on land owned by

Vanmeter.  He farmed the land "on shares," meaning that he provided the

labor, equipment, etc., and Vanmeter provided the land.  John Carroll and

Vanmeter were to divide the gross receipts from the sale of the popcorn,

with John Carroll receiving 70% of the proceeds and Vanmeter receiving

30%.

{¶3}     In addition to farming the Vanmeter land, John Carroll also

raised popcorn in 2002 on land known as the Weber Farm ("Weber").  He

did so under a cash lease, meaning he paid the owners a set price for use of

the land, but kept all profits from the resulting crop.  Though not a party to

this action, John Carroll's father, David Carroll, is also involved in this

matter.  David Carroll also raised popcorn in 2002.  David Carroll raised his crop, on shares, on land known as the Tate Family Farm ("Tate").

{¶4}    On August 19, 2003, John Carroll and Vanmeter entered into a written contract with AGI.  In the contract, AGI is listed as "Buyer," and Vanmeter is listed as "Seller 1" and John Carroll is listed as "Seller 2." Under the terms of the contract, AGI was to buy "approximately 900,000 pounds" of yellow popcorn for $.12 a pound from Vanmeter and John Carroll.  The contract specified that upon delivery of the popcorn, AGI would pay Vanmeter 30% of the purchase price and John Carroll 70%.  AGI, Vanmeter, and John Carroll are the only parties mentioned in the agreement.

{¶5}    In November 2003, AGI picked up its first three loads of popcorn that had been grown on Vanmeter land, totaling 156,690 pounds. Though the contract between Vanmeter and John Carroll and AGI stated that payment would be made within five days of receipt, AGI did not pay for the popcorn until May 2004.  Beside the initial three loads, AGI did not take delivery of any more of the Vanmeter popcorn during that time.  But AGI did take delivery of popcorn grown on Weber and Tate land.

{¶6}    Weight tickets show that between September 3, 2004 and November 20, 2004, AGI picked up 17 additional loads of popcorn grown on Vanmeter land.  AGI did not make payment to Vanmeter or John Carroll

for the 17 loads. AGI claimed the 17 loads were not subject to the original contract it had with Vanmeter and John Carroll, and it had only been able to sell the popcorn at a loss. As a result of that nonpayment, Vanmeter and John Carroll filed a claim against AGI for breach of contract. AGI filed a counterclaim, also alleging breach.

{¶7}     A bench trial on the matter was held in the court below. During trial, AGI argued that it had already fulfilled the terms of the written contract it had with Vanmeter and John Carroll before it took delivery of the last 17 loads of Vanmeter popcorn. AGI stated that John Carroll had arranged for the purchase of all the popcorn, including that which was grown on Weber and Tate land. And, thus, the Weber and Tate popcorn it had purchased was part of the 900,000 pounds of popcorn it had committed to buy under the contract. AGI further argued that the final 17 loads of Vanmeter popcorn had been purchased under a separate oral agreement with John Carroll. And that agreement was not for a fixed price per pound; instead John Carroll told AGI to get what ever price it could for the popcorn.

{¶8}     The trial court disagreed and found that the popcorn harvested on Tate and Webber land was not subject to the August 19, 2003 contract between AGI and Vanmeter and John Carroll. As a result, the court filed a final journal entry granting judgment against AGI in the amount of

$102,636, for the 17 final loads of popcorn from Vanmeter, along with prejudgment interest and costs.  Following that entry, AGI timely filed the current appeal.

## II. Assignment of Error

THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

## III. Standard of Review

{¶9}    AGI's sole assignment of error is that the trial court's decision, finding that AGI had breached its contract with John Carroll and Vanmeter, was against the manifest weight of the evidence.  Accordingly, we first state the appropriate standard of review for such an appeal.

{¶10}    The judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment.  See, e .g., *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus.  This standard of review is highly deferential, and the role of the reviewing court is not to determine if it would have arrived at the same conclusion as the trial court.  *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, at ¶11.  Instead, the reviewing court must uphold the judgment as long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions."

Id., quoting *Bugg v. Fancher*, 4th Dist. No. 06CA12, 2007-Ohio-2019, at ¶9. And reviewing courts must keep in mind that the trier of fact's findings are presumed to be correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273.

{¶11}   Further, in determining whether a judgment is against the manifest weight of the evidence, the credibility of witnesses and the weight given to the evidence are primarily issues for the trier of fact.  See, e.g., *Pottmeyer v. Douglas*, 4th Dist. No. 10CA7, 2010-Ohio-5293, at ¶21.  This is because the trier of fact is better suited than an appellate court to view the witnesses and observe factors such as demeanor, gestures, and voice inflections and to use those observations in weighing credibility.  Id.; *Seasons Coal* at 80.  Additionally, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it.  *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591.

IV. Legal Analysis

{¶12}   Simply stated, AGI's argument is that the trial court erred in finding that it had breached the written contract AGI had with John Carroll and Vanmeter.  AGI claims that it fully performed under the contract and, thus, it was not in breach.  For the following reasons we disagree and find

there is competent and credible evidence in the record below to support the trial court's decision.

{¶13} It is uncontested that AGI took possession of more than one million pounds of popcorn, during the time period in question, which was grown on three separate farms: Vanmeter, Webber and Tate. Further, AGI, through its manager and agent, Alan Overby, testified that John Carroll arranged all the sales with AGI concerning the popcorn grown on the three farms. As a result, in its brief, AGI refers to "John Carroll and his group" and the "Carroll group," implying that the written contract concerned not only popcorn grown on Vanmeter land, but also popcorn grown on Weber and Tate land. But the contract in question was not between AGI and "John Carroll and his group," it was between AGI as buyer and John Carroll and Vanmeter as sellers.

{¶14} The written contract was signed by Alan Overby on behalf of AGI, by John Carroll on his own behalf, and by Vanmeter's president on behalf of Vanmeter Farm. The contract unambiguously states that payment from AGI will be made payable to John Carroll and Vanmeter, with 70% going to the former and 30% to the latter. In addition to the executed contract between AGI and John Carroll and Vanmeter, drafts of several other contracts were also in evidence. One draft shows David Carroll and

Tate Family Farms as the sellers. This draft was signed by AGI but not by David Carroll or Tate. Another draft, signed by AGI but not John Carroll, lists John Carroll as the sole seller. Crucially, the contract that was actually executed, listing AGI as buyer and John Carroll and Vanmeter as sellers, does not contain any reference to David Carroll, Webber Farm or Tate Farm. Accordingly, the trial court found that popcorn harvested on Tate and Webber land was not subject to the written contract.

{¶15} In addition to the contract itself, other evidence presented during trial supports the trial court's finding that popcorn grown on Tate and Webber land was not subject to the contract between AGI and John Carroll and Vanmeter. First there is the testimony of Krishna Popp, John Carroll's daughter and bookkeeper. AGI asserts that payment for popcorn grown on Vanmeter, Webber, and Tate land should not be differentiated, and that all payments were for goods under the same contract. But Popp testified that she sent a detailed billing statement to AGI. The statement broke down the amounts of popcorn grown on each farm, the amount owed for each delivery, and the various percentages to be paid to all parties concerned:

{¶16} "I sent bills out for the 2003 corn, and it included every farm on it, but it had each separate breakdown for the Tate Farm, David Carroll, the Weber Farm for John Carroll, and John Carroll and the VanMeter farm.

Everything … It was also not in one bill, but it was separated out on the paper how the splits went and who to make the checks to." Thus, AGI was able see the amount of popcorn it had received from each farm, including the popcorn grown on Vanmeter land. If

{¶17} Popp's billing statement, as well as the contract itself, specified that payment for popcorn grown on Vanmeter land was to be made payable to both John Carroll and Vanmeter, with 70% going to John Carroll and 30% to Vanmeter. But at least seven of the fourteen checks AGI claims it drafted in fulfillment of the contract were made payable not to Vanmeter or John Carroll, but rather to David Carroll or Tate Family Farms. Further, there was testimony that two of the remaining checks, though made payable to John Carroll, predated the contract and were for test samples of popcorn. There was also testimony that another of the checks made payable to John Carroll was for white corn, not popcorn.

{¶18} Further, the Vanmeter popcorn was not stored in the same location as the popcorn grown on either Weber or Tate land. John Carroll's weight tickets for each of the 20 truckloads of Vanmeter popcorn picked up by AGI were entered into evidence. Each weight ticket of Vanmeter popcorn clearly shows the 70% to 30% split that John Carroll and Vanmeter were to receive, consistent with the written contract. And there was

testimony that a copy of each ticket was given to AGI's driver whenever a load of Vanmeter popcorn was taken. It is also undisputed that AGI paid for only the first three of those 17 truckloads of Vanmeter popcorn.

{¶19} As previously stated, AGI maintains that it had already fulfilled its written contract with John Carroll and Vanmeter before it took delivery of the final 17 loads of Vanmeter popcorn. Further, AGI argues that it accepted the final 17 loads under an oral agreement, and only on the understanding that it would get the best price for the popcorn that it could. And because AGI was only able to sell that popcorn at a loss, it owes John Carroll and Vanmeter nothing. But AGI can only make the argument that it took delivery of "approximately 900,000 pounds" of popcorn, as required under the written contract, if the popcorn grown by David Carroll on Tate land, and the popcorn grown on Webber land is included in the total amount.

{¶20} It is not our role to determine whether we would have arrived at the same conclusion as the trial court. Our role is only to determine if there is some competent and credible evidence to support the trial court's decision. And because of the evidence related above, we find there was some competent and credible evidence for the trial court to determine that popcorn harvested on Tate and Webber land were not subject to the contract between AGI as buyer, and John Carroll and Vanmeter as sellers.

Accordingly, there was competent and credible evidence that AGI paid for only 156,690 pounds of the approximately 900,000 pounds of Vanmeter popcorn it was obligated to buy under the contract. In addition to the 156,690 pounds of Vanmeter popcorn it paid for, AGI also took delivery of 855,300 pounds of Vanmeter popcorn that it did not pay for. As such, it was not against the manifest weight of the evidence for the court below to find that AGI was in breach of contract and is liable to John Carroll and Vanmeter for the balance of the 855,300 pounds of popcorn.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**