[Cite as *In re J.R.*, 2011-Ohio-4643.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 96639 and 96640**

---

# IN RE: J.R., ET AL.

# Minor Children

# [Appeal by Father]

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 10921273 and AD 10921274

**BEFORE:**   Boyle, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   September 15, 2011

**ATTORNEY FOR APPELLANT**

Lester S. Potash
1717 Illuminating Building
55 Public Square
Cleveland, Ohio   44113-1901


**ATTORNEYS FOR APPELLEES**

**For Cuyahoga County Department of Children and Family Services**

William D. Mason
Cuyahoga County Prosecutor
BY:   Thomas B.   Robinson
Assistant County Prosecutor
13815 Kinsman Road
Room 336
Cleveland, Ohio   44120

**For Mother**

Mark Witt
6209 Barton Road
North Olmsted, Ohio   44070-3856

**Guardian Ad Litem for Child**

James H. Schulz, Jr.
1370 Ontario Street
Suite 1520
Cleveland, Ohio   44113

**Guardian Ad Litem for Father**

Suzanne Piccorelli
255 Falmouth Drive
Rocky River, Ohio   44116

MARY J. BOYLE, P.J.:

{¶ 1}  Appellant J.R., Sr. ("father") appeals the trial court's judgment adopting the magistrate's decision, overruling his objections, and finding the minor sons, Jam. R. (d.o.b. 1/10/2000) and Jac. R. (d.o.b. 12/21/2000), to be dependent, and granting custody of them to appellee P.R. ("mother").[1]  He raises two assignments of error for our review:

{¶ 2}  "[1.] The trial court committed prejudicial error by failing to independently review [father's] objections to the magistrate's decisions.

{¶ 3}  "[2.]  The trial court committed prejudicial error in adjudicating the minor children as being dependent."

{¶ 4}  Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶ 5}  Mother and father were divorced in 2003.  They entered into a shared parenting agreement for the children, with mother named as the residential parent.  In 2005, father became the children's temporary residential parent because mother was recovering from a surgical procedure. There is nothing in the record to indicate why the mother did not become the residential parent again when she recovered from surgery.  Father and the

---

[1]The parties are referred to by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.  "Jam. R." and "Jac. R." are abbreviations of the children's names used by Cuyahoga County Department of Children and Family Services in its complaint.  Since the children have the same initials, we will also

children lived with the paternal grandmother when Cuyahoga County Department of Children and Family Services ("CCDCFS") became involved with the case, which was sometime in June 2010.

{¶ 6} CCDCFS became involved in the case due to allegations that father and paternal grandmother were physically abusing the children. CCDCFS received ex-parte custody of the two minor children and placed them in mother's emergency, temporary custody.[2]

{¶ 7} In its refiled complaint for dependency and legal custody to mother, CCDCFS alleged that Jam. R. and Jac. R. were abused and dependent. It alleged that father had inappropriately disciplined the children by punching them. It further alleged that father was overwhelmed with the children's behavior and lacked judgment and parenting skills necessary to provide adequate care for the children.

{¶ 8} A magistrate held an adjudicatory hearing on January 31, 2011. Jennifer Wenderoth, social services supervisor at CCDCFS, testified that the agency received allegations that Jam. R. and Jac. R. were being physically abused by father. Wenderoth stated that father denied the allegations, but

refer to them as "Jam. R." and "Jac. R."

[2]The record indicates that CCDCFS dismissed its original complaint and refiled on August 27, 2010 due to the failure to hold a dispositional hearing within the statutory time limits.

admitted that he was overwhelmed with caring for the children and managing their behavior.

{¶ 9} Wenderoth testified that Jac. R. had significant behavioral issues, and at one point, had to be hospitalized because he could not calm down. Wenderoth testified that Jac. R. called 911 in early August 2010 because father punched him in the legs. The father admitted that he punched Jac. R. in the legs. Wenderoth explained that Jac. R. had been hiding under his grandmother's bed and would not come out. Father punched Jac. R. in the legs to get him to come out from under the bed. Wenderoth never saw any marks on Jac. R.'s legs when she visited the home that indicated he had been physically injured by father's punching him.

{¶ 10} Wenderoth testified that she visited the children at least monthly while they were still in their father's care. She observed signs of physical injury on the boys caused by their grandmother, scars on their arms, which the children said came from their grandmother grabbing their arms.

{¶ 11} Wenderoth also testified that Jam. R. said that his father punched him in the face, but Wenderoth could not substantiate Jam. R.'s allegations. Father denied that he ever punched Jam. R. The children also made allegations that their paternal grandmother bit them, but Wenderoth never saw any bite marks on the children.

{¶ 12} Wenderoth testified that she believed that father lacked the skills necessary to appropriately discipline the children. She further testified that father relied on paternal grandmother for shelter and food, and that he needed "significant assistance to be able to do these things." Wenderoth testified that at one point, father had received his paycheck, but within a couple of days it was gone, and father could not explain where it went.

{¶ 13} Wenderoth further testified that father gets overwhelmed with the children "and a lot of times he did not know how to manage their behavior and at times went overboard in trying to manage their behavior *** and he did use inappropriate discipline techniques." She said that she did not consider punching a child in the legs to be appropriate discipline.

{¶ 14} Wenderoth also testified that father "seemed resistant" to providing some of the services that the children needed, specifically, services to address Jac. R.'s significant behavioral issues and Jam. R.'s anger issues. She said that at times, father was "not there or would leave" when the children had appointments with service providers. She also said that if father was there, he would sometimes do things when the service providers were there to prevent them from doing their job, such as not giving them privacy to counsel the children.

{¶ 15} Mother testified that her sons would call her to come and get them and once she heard father say, "take them out of here before I kill

them." When she got to their home, father refused to send Jac. R.'s medications with him because he was angry.

{¶ 16} The magistrate found the children to be dependent because "father is overwhelmed with the children's behavior" and "father lacks judgment and parenting skills necessary to provide adequate care for the children," but she determined that CCDCFS failed to establish by clear and convincing evidence that the children had been abused. The magistrate granted temporary custody to mother.

{¶ 17} Father filed objections to the magistrate's decision. The trial court overruled father's objections and adopted the magistrate's decision in its entirety. It is from this judgment that father appeals.

Independent Review of Magistrate's Decision

{¶ 18} In his first assignment of error, father argues that the trial court merely "rubber stamped" the magistrate's decision and failed to conduct an independent review.

{¶ 19} Civ.R. 53(D)(4)(d) provides that "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶ 20} A trial court must independently review a magistrate's decision, and any objections, to determine whether the magistrate properly determined the factual issues and appropriately applied the law. Civ.R. 53(D)(4)(d). Under this de novo standard of review, the trial court may not merely "rubber stamp" the magistrate's decision. *Knauer v. Keener* (2001), 143 Ohio App.3d 789, 793, 758 N.E.2d 1234. An appellate court must uphold the judgment so long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions." *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶11.

{¶ 21} Father argues that because the trial court adopted the magistrate's decision a mere four days after he filed his objections to the magistrate's decision, it shows that the trial court could not have independently reviewed the case. Father further argues that the trial court's judgment does not give any "indicia that [it] conducted an independent, de novo review." We disagree that these facts by themselves indicate that the trial court failed to independently review the case.

{¶ 22} Here, the trial judge indicated that she had considered the court file, the magistrate's decision, father's objections, and CCDCFS's response and found that father's objections were not well taken. Although the trial judge's opinion is short, there is no evidence that she merely "rubber

stamped" the magistrate's decision. *MacConnell v. Nellis*, 2d Dist. No. 19924, 2004-Ohio-170, ¶12.

{¶ 23} We must, however, review the record to determine if there is "some evidence from which the trier of fact could have reached its ultimate factual conclusions" before we overrule father's first assignment of error. *Amsbary*, 177 Ohio App.3d at ¶11. In doing so, we will necessarily address his second assignment of error, i.e., whether the trial court erred in finding the minor children to be dependent.

R.C. 2151.04 — Dependency

{¶ 24} Under R.C. 2151.04, "dependent child" is defined, in part, to be any child:

{¶ 25} "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

{¶ 26} "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

{¶ 27} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

{¶ 28} A finding of dependency must be supported by clear and convincing evidence. R.C. 2151.35; Juv.R. 29. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as

to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

{¶ 29} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶ 30} Father raises several issues in his second assignment of error. But in all of them, he argues that CCDCFS failed to prove by clear and convincing evidence that his children were dependent. We disagree.

{¶ 31} After a review of the record, we find there was "some competent, credible evidence" from which the trial judge could have found the children dependent. CCDCFS presented evidence that Jac. R. had significant behavioral issues that father had a difficult time addressing. Father

admitted as much. Wenderoth stated that she believed father lacked the skills to appropriately discipline the children. Father admitted being overwhelmed with the children's behavior and admitted punching Jac. R. in the legs when Jac. R. refused to listen to him. Mother testified that she heard father threaten to kill the children if she did not come to get them.

{¶ 32} Wenderoth also testified that father had a difficult time managing money, such that she had serious doubts that father could provide food and shelter without paternal grandmother's assistance. And finally, father was also reluctant to provide some of the needed services for the children, such as counseling, when they were in his care.

{¶ 33} Accordingly, we find there was "some competent, credible evidence" for which the trial court could find that the children were dependent. We further conclude that since there was some evidence for the trial court to reach its ultimate factual conclusion, the trial court did not err when it adopted the magistrate's decision.

{¶ 34} Thus, father's first and second assignments of error are overruled.

Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
SEAN C. GALLAGHER, J., CONCUR