[Cite as *Hrynik v. Nicole Brayden Real Estate*, 2012-Ohio-3822.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98036

---

## JOHN HRYNIK, ET AL.

### PLAINTIFFS-APPELLANTS/
### CROSS-APPELLEES

vs.

## NICOLE BRAYDEN REAL ESTATE

### DEFENDANT-APPELLEE/
### CROSS-APPELLANT

---

## JUDGMENT:
## REVERSED IN PART; AFFIRMED IN PART

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-740002

**BEFORE:** Jones, P.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEY FOR APPELLANTS**

Douglas P. Whipple
Whipple Law, LLC
13940 Cedar Road, Suite 420
University Heights, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Michael D. Brennan
5910 Landerbrook Drive
Suite 200
Cleveland, Ohio 44124

Thomas M. Horwitz
Thomas M. Horwitz Co., LPA
1991 Crocker Road
Suite 600
Westlake, Ohio 44145

LARRY A. JONES, SR., P.J.:

{¶1} This case involves a dispute over a commercial lease. The matter proceeded to a bench trial at which the court entered judgment in favor of plaintiffs-appellants/cross-appellees, John Hrynik, et al. Hrynik is now appealing the trial court's decision to deny his motion for attorney fees. Defendant-appellee/cross-appellant, Nicole Brayden Real Estate ("NBRE") filed a cross-appeal arguing that the trial court erred by entering judgment in favor of Hrynik. For the reasons that follow, we reverse in part and affirm in part.

{¶2} In 2008, NBRE and Hrynik entered into a commercial lease whereby NBRE agreed to lease Hrynik 15,000 square feet of warehouse space in a 50,000 square foot building located in Warrensville Heights. Hrynik paid the first and last month's rent and a $2,500 security deposit as his initial payment on the lease. Hrynik operated a laundry business known as B&H Laundry, a subsidiary of Marbelle Industries, and planned on using the warehouse space for cold storage of washers and dryers. Adjacent to the warehouse space was a dock, restrooms, and an office. The office area was accessible either from the warehouse or from outside.

{¶3} The dispute between the parties arose in late 2009, when the owner of NBRE, Keith Schwartz, discovered that Hrynik was using the office for storage of personal items. NBRE demanded an additional $600 a month in rent for the office and also demanded a year of back rent for the office; Hrynik refused and decided not to renew his lease.

Hrynik moved out, but NBRE did not return his security deposit, claiming that B&H Laundry owed NBRE for damage to the office floor and for rent for use of the office space.

{¶4} Hrynik filed suit against NBRE, alleging that the latter failed to return his $2,500 security deposit. NBRE filed an initial counterclaim seeking $4,700 in unpaid rent for the office space, late fees, interest, and costs. The company then amended their counterclaim to demand judgment in excess of $100,000.

{¶5} The matter proceeded to a bench trial at which the following pertinent evidence was presented.

{¶6} Donna Hunter, who worked for Hostess Brands, testified that Hostess occupied parts of the subject building, including the office space, before Hrynik moved into the warehouse. Hunter testified that Hostess decided to move to the rear of the building and Hrynik moved in to the front area of the warehouse. According to Hunter, she assumed that Hrynik was leasing the office space of the warehouse because Hostess had that space as part of their lease. When necessary, she would contact Hrynik to gain access to the office because the building's thermostats were located in the office. Hunter testified that she had knowledge that the building's sump pump would occasionally stop working. If the sump pump stopped, water would leak into the office area, and this occurred on more than one occasion. Hunter further testified that she did not remember when Hrynik moved boxes into the office space, but she thought it was prior to July 2009.

{¶7} Carl Hall testified that he was the operations manager for Hrynik's business

and it was his understanding that the company was leasing warehouse space that included the bathrooms, dock, and office. He testified that he always had access to the office area because the door was either open or unlocked. According to Hall, the office floor was in "fair" condition when the company leased the area and remained in fair condition during the lease. Hall testified that, at the time B&H Laundry commenced its lease, he noticed water damage to the floor tiles in the office area.

{¶8} Keith Schwartz testified that he was the sole principal and member of NBRE. When Schwartz did the initial walk thru with Hrynik, he showed Hrynik the warehouse space, dock, restrooms, and office area. But when it came time to negotiate the terms of the lease, Hrynik told him that he had no use for the office. Thus, according to Schwartz, NBRE's lease with Hrynik did not include the office space. Schwartz claimed that the office had a door with a lock on it and he would have given B&H Laundry keys to the office if the lease included that area.

{¶9} Schwartz admitted that the sump pump malfunctioned at least once in 2008 and 2009 and he knew that water had leaked into the office space. He argued, however, that the floor of the office was in good condition, the tiles were not peeling, and the floor did not have scratches on it prior to Hrynik's laying pallets on the floor.

{¶10} In October 2009, Schwartz brought a prospective tenant to see the office space and was surprised to discover boxes and other household items on pallets in the office. A few weeks later, he emailed B&H Laundry an invoice for back rent for the office at a rate of $600 a month for the entire time period of the lease (13 months).

{¶11} On cross-examination, Schwartz conceded that the lease with B&H Laundry included use of the dock and restrooms adjacent to the warehouse, even though the lease did not specifically provide for their use.

{¶12} Hrynik testified that he owned B&H Laundry and leased the warehouse space to store approximately 800 coin-operated washers and dryers. Hrynik admitted he initially told Schwartz he had no use for the office area of the warehouse, but considered the office, dock, and restrooms part of the 15,000 square feet covered by the lease.

{¶13} Hrynik testified that the first time he went into the office, shortly after signing the lease, it was at Hunter's request because the building's thermostats were located in the office. At that time he noticed a half-inch of standing water in the office. In October 2009, his daughter got divorced, and he moved her belongings into the office space; at that time he put her boxes on pallets because he knew there was potential that the office would flood.

{¶14} As to the condition of the office floor, Hrynik testified that at the time he moved the pallets into the office, the floor was "a typical 20- to 30-year old floor, which had been worn from over time and from the water. Some of the tiles were flaking and some of the tiles were raising up at the edges."

{¶15} A month or so later, Hrynik found out that he was not supposed to use the office. He moved his daughter's belonging out of the office, but testified that there was no damage to the floor from his pallets.

{¶16} Hrynik ended his lease in December 2009. He requested the return of his

$2,500 security deposit, but did not receive it.

{¶17} After hearing all testimony and accepting the parties' closing arguments in the form of briefs, the trial court issued a judgment entry ruling in favor of Hrynik in the amount of $2,500 plus interest. The trial court further ordered each party to pay their own costs and attorney fees.

{¶18} Hrynik assigns two errors for our review, as quoted:

I. The trial court erred and abused its discretion, to the prejudice of Appellants, by failing to enforce the attorney fee clause in the parties' commercial lease.

II. The trial court erred and abused its discretion, to the prejudice of Appellants, by failing to conduct a post-trial evidentiary hearing on the amount and reasonableness of Appellant's attorney fees.

{¶19} NBRE filed a cross appeal, assigning the following four assignments of error, as quoted:

I. The trial court erred by entering judgment in favor of B&H Laundry Services Inc. and Marbelle Industries, Inc.

II. The trial court erred when it held that the Lease was ambiguous and construed it against NBRE.

III. The trial court erred when it failed to enter judgment in favor of NBRE on its amended counterclaim.

IV. The trial court erred when it failed to consider NBRE's amended counterclaim.

## I. Hrynik's Appeal

{¶20} In his assignments of error, Hrynik argues that the trial court erred by failing to order NBRE to pay his attorney fees. He further claims that the trial court erred when

it failed to hold an evidentiary hearing on the issue of attorney fees.

## A. Amended Complaint

**{¶21}** NBRE claims that Hyrnik is not entitled to attorney fees because he failed to request them in his original complaint. Although NBRE acknowledges Hrynik requested attorney fees in his amended complaint, the company argues that the amended complaint was never properly before the court.

**{¶22}** Civ.R. 15(A) provides, in part, as follows:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.

**{¶23}** The record reflects that on March 11, 2010, Hrynik filed his complaint. NBRE attempted to file a handwritten counterclaim, but the court did not accept it for filing. NBRE filed a motion for reconsideration of that decision. The trial court issued an entry in which it stated that it was treating the motion for reconsideration as a motion for transfer to the regular docket of the Bedford Municipal Court and granted the transfer on March 30, 2010.

**{¶24}** On April 16, 2010, Hrynik filed his first amended complaint, in which he

requested attorney fees. On April 21, 2010, the trial court scheduled a pretrial on "plaintiff's first amended complaint." On May 10, 2010, NBRE filed its answer to the first amended complaint and its first amended counterclaim. What we can glean from the municipal court record is that Hrynik filed his complaint in small claims court and NBRE tried to file a counterclaim, but was not allowed to do so. NBRE then moved for reconsideration and the trial court transferred the case to the regular docket based on the dollar amount NBRE asked for in the counterclaim. Hrynik filed his first amended complaint and NBRE *then* filed its answer to the first amended complaint and its first amended counterclaim.

**{¶25}** Pursuant to Civ.R. 7(A), only complaints, answers, and replies constitute pleadings; Schwartz's initial counterclaim was not a responsive pleading. NBRE did not file its responsive pleading, the answer, until *after* Hrynik filed his first amended complaint. As such, pursuant to Civ.R. 15, Hrynik's was entitled to amend his complaint.

**{¶26}** Based on these facts, we find no merit to NBRE's argument that Hyrnik's first amended complaint was not properly before the court.

### B. Attorney Fees

**{¶27}** Generally, in Ohio each party to a lawsuit must pay his or her own attorney fees. Exceptions to this rule allow fee-shifting and taxing attorney fees as costs (1) if there has been a finding of bad faith; (2) if a statute expressly provides that the prevailing party may recover attorney fees; or (3) if the parties' contract provides for fee-shifting. (Internal citations omitted.) *Keal v. Day*, 164 Ohio App.3d 21, 24, 2005-Ohio-5551, 840

N.E.2d 1139 (1st Dist.); *see generally Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. Any attorney fees award must be "fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), syllabus.

{¶28} In the case at bar, paragraph 23 of the lease provided:

Attorney's Fees: If either party named herein brings [an] action to enforce the terms hereof or declare rights hereunder, the prevailing [party] in any such action, on trial to appeal, shall be entitled to reasonable attorney's fees and to be paid by the losing party as fixed by the court.

{¶29} The contract between Hyrnik and NBRE specifically provided that the losing party would pay the prevailing party's reasonable attorney fees. During trial, each party requested attorney fees should it be found to be the prevailing party. Specifically, Hrynik requested reasonable attorney fees for his "prosecution of its claim for the return of its security deposit," for his defense against NBRE's counterclaim and "pursuant to the Court's decision on November 22, 2010, granting Plaintiff's motion to compel discovery and for award of attorney fees." The trial court, however, determined that each party would bear its own costs and attorney fees. This was in error.

{¶30} The trial court found that the lease was an enforceable contract between the parties. That contract specifically provided for the losing party to pay the prevailing party's attorney fees; the amount to be determined by the court. Based on this, the trial

court should have determined an amount of reasonable attorney fees. And based on our review of the trial court record, the court would be unable to determine the amount of attorney fees absent documentary or testimonial evidence from Hrynik. Therefore, upon remand, the trial court shall hold a hearing to determine a reasonable amount of attorney fees.

{¶31} The first and second assignments of error are sustained.

## II. NBRE's Cross-Appeal

{¶32} In NBRE's first and second cross-assignments of error, the company argues that the trial court erred in entering judgment in favor of Hrynik. In the company's third and fourth cross-assignments of error, it argues that the trial court erred in failing to award damages on NBRE's counterclaim.

## A. Standard of Review

{¶33} While NBRE argues specific points in its assignments of error, it is essentially arguing the trial court's judgment in favor of Hrynik was against the manifest weight of the evidence.

{¶34} A reviewing court will not reverse a trial court's judgment in a civil action unless it is against the manifest weight of the evidence. A trial court's judgment is not against the manifest weight of the evidence so long as some competent and credible evidence supports it. *See*, *e.g.*, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. To determine whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the

evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). Under this highly deferential standard of review, this court does not decide whether we would have come to the same conclusion as the trial court. *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶ 11 (4th Dist.). Instead, we must uphold the judgment so long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions." *Id.*, citing *Bugg v. Fancher*, 4th Dist. No. 06CA12, 2007-Ohio-2019, ¶ 9. Moreover, we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. *See*, *e.g.*, *Seasons Coal*, at 80. That being said, to the extent that the judgment involves a question of law, we review the question of law independently and without any deference to the trial court. *Cooper v. Smith*, 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, ¶ 10 (4th Dist.).

### B.   The Parties' Lease

{¶35} In Ohio,

> courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. When the terms in a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by the parties.

(Internal citations omitted). *Shifrin v. Forest City Ents.*, 64 Ohio St.3d 635, 638, 1992-Ohio-28, 597 N.E.2d 499.

**{¶36}** Generally, any ambiguities in a lease are construed against the party who prepared the lease. *Cleveland v. Sohio Oil Co.*, 8th Dist. No. 78860, 2001 Ohio App. LEXIS 5192, *15 (Nov. 21, 2001). A

> fundamental and frequently applied general rule of construction is that if there is doubt or ambiguity in the language of a contract the document is to be construed strictly against the party who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its language. He who speaks should speak plainly or the other party may explain to his own advantage.

*Id.,* citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967).

**{¶37}** Here, the trial court concluded that the lease was ambiguous because it did not expressly include or exclude the office space. NBRE argues that the trial court erred in (1) finding that the lease was ambiguous and (2) construing any ambiguity in favor of Hrynik.

**{¶38}** The lease, which Schwartz testified was a boilerplate lease he got from the prior owners of the building, contained a premises clause, which stated: "Lessor hereby leases to Lessee * * * Fifteen Thousand (15,000) square feet of space * * * commonly known as the front portion of the fifty thousand (50,000) square foot building." The "use" clause stated that "[t]he premises shall be used and occupied for storage, warehousing and distribution of washers and dryers." The lease did not further delineate or describe the premises being leased.

**{¶39}** In its judgment entry, the trial court found, in part, as follows:

> The Lease provided for the rent of 15,000 square feet including the "front portion" of the Defendant's building. The Plaintiffs used a majority of the Lease premises for storage of coin laundry equipment. The Plaintiffs' [sic] claimed that of the 15,000 square feet, that the "office space[,]" which was

directly connected to the warehouse that the Plaintiffs used, was indeed part of the 15,000 square feet, which is the object of the lease.

The Defendant claimed that the office space was excluded from the 15,000 square feet and also claim that Plaintiffs' [sic] owe rent for the office space, and late fees, and also damage to the floor covering the office space, along with the attorney fees. * * *

The question is whether or not the office space is included or can be presumed to be part of the 15,000 square feet.

It is clearly not **excluded** from the 15,000 square feet.

The Plaintiffs argue that a prior lessor and its lease * * * included the office space in a virtually identical lease. * * *

Inasmuch as the lease was ambiguous (and whether or not the office space was included or excluded), that ambiguity must be construed against the Defendant. * * *

The Court has found the office space was part of the Lease premises.

(Emphasis sic.) Trial court's January 31, 2012 judgment entry.

**{¶40}** Based on the transcript of the trial in this matter, we find that there was competent, credible evidence to support the trial court's decision in favor of Hrynik.

**{¶41}** Hrynik testified that he understood that the office was included in the lease. Although Hrynik did not initially believe that he would use the office space, he decided to use it to store his daughter's belongings after she divorced. In order to access the office space from the inside of the building, one had to pass through his warehouse space. Moreover, if a person in the office wanted to access the bathrooms, he or she would have to go through Hyrnik's warehouse space.

**{¶42}** The lease in this case makes no mention of the office space; the lease does

not either specifically include or exclude the office space. But the lease also did not include or exclude other areas the parties agree were part of the lease, specifically the bathroom and the dock. Although Schwartz testified that the lease did not include the office space, we leave it to the trial court's discretion to decide factual conflicts. In so far as the ambiguity of the lease is a question of law, after a de novo review, we agree with the trial court that the lease was ambiguous as the term "front portion of the fifty thousand (50,000) square foot building" could include the warehouse space, office, bathrooms, and dock.

{¶43} NBRE also claims that the trial court erred in ordering NBRE to return the security deposit to the "plaintiffs" when Hrynik was the only party to the lease. But the parties' lease identified the lessee as "John Hrynik DBA [B & H] Laundry Inc. separately and jointly." In his first amended complaint, Hrynik listed himself and Marbelle Industries, d.b.a. B&H Laundry Services, Inc., as the plaintiffs.

{¶44} NBRE was ordered to pay $2,500, the amount of the security deposit, plus interest, to the plaintiffs. Whether there is one, or more than one, plaintiff denoted in the trial court's judgment entry is of no consequence as the damage award is the same.

{¶45} Based on these facts, the first and second cross-assignments of error are overruled.

### III. NBRE's Counterclaim

{¶46} In the third and fourth cross-assignments of error, NBRE argues that the trial court erred in failing to grant its counterclaim for past due rent and damages. In its

amended counterclaim, NBRE demanded judgment for a year's worth of rent of the office at $600 a month plus compounding late fees, for damage to the floor, and for attorney fees and costs, in an amount totaling over $100,000.

**{¶47}** The trial court found that the lease could be construed to include the office space and this court agrees; therefore, NBRE cannot recover for any additional rent it alleged Hrynik owed for use of that space.

**{¶48}** As to its claims that Hrynik damaged the office floor, we again defer to the judgment of the trial court. Hrynik and Hall testified that the office floor suffered water damage prior to Hrynik putting pallets on the floor. Although Schwartz insisted the floor was in good condition prior to Hrynik using the office, the trial court was in the best position, as trier of fact, to resolve this dispute.

**{¶49}** In light of the above, we find that there was competent, credible evidence going to the court's decision to deny NBRE's counterclaim.

**{¶50}** The third and fourth cross-assignments of error are overruled.

**{¶51}** Accordingly, the case is remanded for an evidentiary hearing to determine the amount of reasonable attorney fees to be awarded to the appellants. The trial court's judgment is affirmed in all other respects.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

____

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR