OPINION
{¶ 1} O. Valeria Stores, Inc., and Michael J. Young, defendants-appellants, appeal from a judgment of the Franklin County Court of Common Pleas, in which the court granted appellants' motion to vacate entry to allow reconsideration but overruled appellants' objections to the magistrate's decision.
 {¶ 2} On May 3, 2005, appellants entered into a three-year lease to rent retail space at Lane Avenue Shopping Center ("shopping center") from UAP-Columbus JV326132 ("UAP"), appellee, with Young signing the lease personally as guarantor. *Page 2 
Under the lease, appellants were to pay monthly rent beginning on June 3, 2005, as well as other charges, including a pro-rata share of common area maintenance expenses ("CAM"), real estate taxes, and a marketing charge. Appellants paid rent from June 2005 to November 2005. Because the store was struggling financially, Young claimed that he negotiated a new agreement with UAP to voluntarily vacate the premises without any obligation to pay further rent after November 2005. Appellants vacated the premises in March 2006. UAP took possession of the premises in April 2006, put up a temporary wall to cover the front of the store, placed "for lease" signs on both ends of the wall, and placed the location for lease with local realty agencies.
 {¶ 3} On March 1, 2006, UAP filed a complaint, seeking to recover from appellants past due rent and future rent through May 2008. On September 8, 2006, UAP filed a motion for summary judgment. Appellants countered that UAP committed several breaches of contract that would have discharged their duties under the lease, UAP was barred from accelerating the rental payments based upon their later oral agreement whereby future rents would not be due if appellants vacated the premises, and UAP failed to mitigate its damages. On February 1, 2007, the trial court issued a judgment, granting UAP's motion for summary judgment with regard to appellants' breach of the lease. The trial court found that there were no factual disputes as to the mathematical calculation of amounts due and owing, and ordered damages for past due rents of $51,071.11 and future rents due in the amount of $76,456.74. However, the trial court found there were issues of fact remaining as to whether UAP mitigated damages and referred the mitigation issue to a magistrate. *Page 3 
 {¶ 4} A hearing was held before the magistrate on March 14, 2007. On April 3, 2007, the magistrate issued a decision, in which he entered judgment in favor of UAP for updated past due rents of $122,698.62 and updated future rents due of $45,448.57. Appellants filed objections to the magistrate's decision on April 17, 2007. On June 7, 2007, the trial court overruled the objections on the basis that appellants had failed to file a transcript of the proceedings before the magistrate. On June 13, 2007, appellants filed a motion to vacate and reconsider, asserting that a transcript had, in fact, been timely filed. On July 2, 2007, the trial court issued a judgment, granting appellants' motion to vacate entry to allow reconsideration, but overruling appellants' objections. Appellants appeal the judgment of the trial court, asserting the following assignments of error:
 [I.] THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S RECALCULATION OF THE AMOUNT OF PAST AND FUTURE RENT DUE AND OWING AS THOSE FINDINGS WERE BEYOND THE SCOPE OF THE COURT'S REFERRAL.
 [II.] THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DETERMINATION OF THE AMOUNT DUE AND OWING IS ERRONEOUS AS A MATTER OF LAW AS IT IS BASED ON LATE CHARGES AND INTEREST WHICH ARE UNLAWFUL PENALTIES AND A DOUBLE RECOVERY OF DAMAGES.
 [III.] THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S FINDING THAT THE APPELLEE HAD MET ITS BURDEN OF MITIGATING ITS DAMAGES WHEN THE EVIDENCE ESTABLISHED THAT THE APPELLEE, IN FACT, CONCEALED THE AVAILABILITY OF THE PREMISE. ADDITIONALLY, THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 [IV.] THE TRIAL COURT ERRED AS A MATTER OF LAW BY ERRONEOUSLY INTERPRETING THE LEASE WITH REGARD TO THE APPLICABLE CAM CHARGE. *Page 4 
 {¶ 5} Appellants argue in their first assignment of error that the trial court erred when it adopted the magistrate's updated recalculation of the amount of past and future rents due and owing, as those findings were beyond the scope of the court's referral. Appellants point to the trial court's statement in its February 2, 2007 decision, "the Court finds that no factual disputes exist as to Plaintiff's mathematical calculation of the amounts due and owing. Thus, this matter shall proceed to trial solely on Defendants' affirmative defense of failure to mitigate damages." Appellants also point to Civ.R. 53(D)(1)(b), which provides, in pertinent part:
 (D) Proceedings in Matters Referred to Magistrates.
 (1) Reference by court of record.
 * * *
 (b) Limitation. A court of record may limit a reference by specifying or limiting the magistrate's powers, including but not limited to, directing the magistrate to determine only particular issues, directing the magistrate to perform particular responsibilities, directing the magistrate to receive and report evidence only, fixing the time and place for beginning and closing any hearings, or fixing the time for filing any magistrate's decision on the matter or matters referred.
Thus, appellants claim that the magistrate "took it upon himself to take new evidence as to the original `amount due and owing,'" which had already been decided by the trial court in its decision on summary judgment.
 {¶ 6} We disagree with appellants' contentions. In his decision, the magistrate stated that UAP presented updated calculations at trial, which took into account the rents that had converted from future rents due to past rents due since the trial court's original *Page 5 
judgment, plus the newly accumulated interest and late charges due on those updated amounts. The magistrate then explained:
 The Magistrate allowed introduction of evidence explaining and updating the calculations of amounts due under the Lease for two reasons. First, Defendants took the position that the calculations should be put in evidence at trial because the calculations were not sufficiently explained in the affidavit submitted by Plaintiff or sufficiently addressed at the summary judgment stage; Plaintiff did not object to introducing updated calculations. Second, detailed information regarding the method used in making the calculations was necessary to provide a basis for the Magistrate to calculate the amount due and owing if Defendants' defense of failure to mitigate were wholly or partially successful.
 {¶ 7} In addressing the same argument on objections as appellants raise herein, the trial court found that, although the court had previously stated that there was no factual dispute regarding UAP's mathematical calculation of damages, and the trial before the magistrate would proceed solely on appellants' affirmative defense of failure to mitigate, the parties presented evidence at the magistrate's hearing on the calculation of UAP's damages. Citing the above-quoted language from the magistrate's decision, the trial court found that the evidence submitted at the magistrate's hearing was presented at appellants' insistence and with both parties' consent. Further, the trial court noted that, because appellants had failed to refute UAP's evidence regarding damages at the summary judgment stage, they were "fortuitously" granted an opportunity to do so at the magistrate's hearing. The result, stated the trial court, was that the amount of damages logically increased since the time of the summary judgment briefing due to the passage of time, making additional monthly rent past due plus interest and late fees. *Page 6 
 {¶ 8} We agree with the magistrate's and the trial court's reasoning on this issue. Evidence and testimony relating to the back rent, late charges, interest, and future rent charges were presented at the magistrate's hearing, and appellants consented and failed to raise any objection. The record of the hearing before the magistrate does not appear to begin at the commencement of the hearing, but sometime after the hearing had already begun. However, it appears that the back rent/late charges/interest exhibit, plaintiff's Exhibit 2, detailing the updated amounts through March 14, 2007, had already been marked and the testimony of Heather Johnson, the property accountant for the shopping center, relating to the exhibit had already commenced. The available transcript contains much testimony from Johnson regarding this exhibit and the updated totals, and appellants never raised any objection thereto. Specifically, Johnson explicitly agreed that the $122,698.62 from Exhibit 2 was "the total delinquent amount due to the landlord under the lease as of today's date." The exhibit was later admitted without objection. Likewise, the future rent charges exhibit, plaintiff's Exhibit 4, explicitly detailed the future rent charges due from April 1, 2007 through June 30, 2008, and Johnson presented much testimony regarding the $45,448.57 total. At no time did appellants raise an objection to the exhibit or testimony. Indeed, the following exchanges between UAP's counsel and Johnson took place without objection and with the consent of both parties:
 Q. So, Ms. Johnson, taking together these two amounts, $122,698.62, which is the amount you testified is past due and owing as of today's date, and $45,448.57, which is the amount you said under the terms of the lease is due and owing for the future sums after today's date, are those two amounts the total damages the plaintiff is claiming in this action?
 A. Yes. *Page 7 
 * * *
 Q. Ms. Johnson, [appellants' counsel] pointed out that the figures you testified to that are set forth in Plaintiff's Exhibit 2 and Plaintiff's Exhibit 4 are different than the figures that you've testified to in your affidavit in support of the plaintiff's motion for summary judgment. Do you recall that testimony a few minutes ago?
 A. Yes.
 Q. Do you remember — do you recall, Ms. Johnson, what the amounts for the past due rent and the future rent were in your affidavit in support of summary judgment?
 A. I believe so.
 Q. What were they?
 A. * * * I think 75,000 something for the future rent.
 Q. If I told you —
 A. I don't recall the other one.
 Q. If I told you $76,456.74 for the future rent, and $51,071.11 for the back rent, does that sound correct?
 A. I believe so.
 Q. Now, obviously, Ms. Johnson, the amounts you're testifying to today are higher than that. What do you attribute that difference to?
 A. Due to the number of months that are now not on the discounted rate but on the back rent and late charges with the interest.
 Q. In other words, in the time since you did that affidavit, I believe sometime last August, a number of months have moved from the future rent charges in to the past due charges and have accrued late fees and interest?
 A. Yes. *Page 8 
 Q. That's why the numbers you are testifying to today are higher?
 A. Yes.
 {¶ 9} From this exchange, it is clear that appellants were aware that UAP was requesting the damages be updated to reflect the amounts presently due and owing since the trial court's original calculation, and appellants failed to raise any objection. Counsel for appellants also cross-examined Johnson on these exhibits and her testimony as to the updated amounts, giving no indication that appellants objected to the updated totals being requested by UAP, and thereby consenting to try the issue. Loc.R. 99.02(B) of the Franklin County Court of Common Pleas provides that a magistrate, in any referred matter, must hear "any issues submitted by consent of the parties." Nothing in the Ohio Civil Rules conflicts with this permissive language. We note that the Civ.R. 53(C)(1)(c) requirement for the parties' written consent before a magistrate may hear "any issue" is necessary only in cases of jury trials, which the present case was not. See Partridge v. Partridge (Aug. 27, 1999), Greene App. No. 98 CA 38 (referring to former Civ.R. 53[C][1][a][iii], which is nearly identical to Civ.R. 53[C][1][c]).
 {¶ 10} In addition, it is true that a magistrate obtains authority to hear and make recommendations only on those matters referred to it by the trial court, and "[a] magistrate's authority is subject to the specifications and limitations stated in the order of reference."Flynn v. Flynn, Franklin App. No. 03AP-612, 2004-Ohio-3881, at ¶ 11, citing Civ.R. 53(C)(2). However, once a magistrate submits a report, the trial court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter *Page 9 
to the magistrate with instructions, or hear the matter. Civ.R. 53(E)(4)(b). Moreover, in ruling on objections to a magistrate's decision, the trial court is required to make a full and independent judgment of the referred matter, and should not adopt the findings of the magistrate unless the trial court fully agrees with them.DeSantis v. Soller (1990), 70 Ohio App.3d 226, 232. A trial court retains its authority to decide an issue independent of the magistrate, as the grant of authority to a magistrate does not affect a trial court's jurisdiction. Proctor v. Proctor (1988), 48 Ohio App.3d 55, 59. Thus, here, the trial court was within its duty to review the testimony before the magistrate and make an independent determination as to the updated damages totals. Therefore, for these reasons, we find the trial court did not err when it adopted the magistrate's decision, which included a damages award that reflected the updated amounts for back rent due, late charges, interest, and future rents. Appellants' first assignment of error is overruled.
 {¶ 11} Appellants argue in their second assignment of error that the trial court erred when it adopted the magistrate's determination of the amount due and owing because such amount was based on late charges and interest that are unlawful penalties and a double recovery of damages. Of the $122,698.62 in past due rent awarded by the magistrate, $63,010.47 is attributable to late charges or interest. Appellants claim that these charges and interest constitute an unenforceable penalty, in that they were designed solely to punish appellants, the actual damages were not difficult to ascertain, the charges did not bear a reasonable proportion to actual losses, and the parties did not deliberately consider any damages that might flow from the breach.
 {¶ 12} The trial court found that appellants waived this issue, as this defense was not raised in their answer, their response to the motion for summary judgment, or at the *Page 10 
trial before the magistrate. We agree. Civ.R. 8(C) provides that, in a pleading to a preceding pleading, "a party shall set forth affirmatively * * * any * * * matter constituting an avoidance or affirmative defense." The Ohio Supreme Court has held that affirmative defenses other than those listed in Civ.R. 12(B) are waived unless they are raised in the pleadings or in an amendment to the pleadings. Jim's SteakHouse, Inc. v. Cleveland (1998), 81 Ohio St.3d 18, 20. That a provision for liquidated damages constitutes a penalty rather than a valid liquidated damages provision is an affirmative defense. Arrow UniformRental, Inc. v. Nix, Cuyahoga App. No. 81144, 2002-Ohio-5855, at ¶ 15, citing Tremco Inc. v. Kent (May 29, 1997), Cuyahoga App. No. 70920. Therefore, because appellants failed to raise the affirmative defense of penalty in any responsive pleading, the defense is deemed waived. Id., citing Jim's Steak House, at 20.
 {¶ 13} Further, although a party may also raise an affirmative defense in an amended pleading, Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6, here, appellants failed to raise the penalty defense in any amended pleading. Additionally, although Civ.R. 15(B) allows a party to amend the pleadings to conform to the evidence presented at trial when the issue was tried by express or implied consent of the parties, appellants never raised the penalty issue at trial either. See, also, Arrow UniformRental, supra, at ¶ 15 (appellant failed to raise the defense of penalty at the default judgment hearing; thus, the defense is deemed waived on appeal).
 {¶ 14} Appellants' argument against waiver is that UAP's complaint did not expressly make a claim for late charges beyond February 28, 2006. This argument is unconvincing. In its complaint, UAP alleges: *Page 11 
 Pursuant to the terms of the Lease, Plaintiff is entitled to receive damages from Defendants totaling $8,215.93 as of February 28, 2006, plus applicable late fees, and additional rent in the amount of $1,975.50 for each month thereafter through April 30, 2008, together with all other applicable common area maintenance charges, real estate taxes, marketing fees, and any and all additional expenses owed under the Lease for each month that O. Valeria continues to occupy the Premises.
(Emphasis added.)
 {¶ 15} Although UAP specified in the above provision that it was entitled to certain damages and late fees as of February 28, 2006, it is clear that the total damages and late fees referenced were merely the latest past due amounts and late fees due as of the date of the filing of the complaint. Because it is apparent from the above allegations that UAP was seeking late fees for past due amounts, appellants' claim that they did not know that UAP would seek additional late fees beyond February 28, 2006 as other payments became past due rings hollow. Additionally, in its motion for summary judgment, UAP specifically alleged that it was entitled to damages from appellants for "late fees and interest." Furthermore, attached to the motion for summary judgment was the affidavit of Johnson, in which Johnson averred that appellants were liable for a ten percent per month late charge of all past due amounts and 18 percent interest on all past due amounts, while specifically citing the provisions of the contract that required such charges.
 {¶ 16} Appellants also counter that UAP's motion for summary judgment never "broke out" any amount for late fees or interest. However, whether UAP ever specifically "broke out" the specific amounts for late fees or interest is immaterial as to whether appellants should have asserted their defense at an earlier time. It was sufficient that *Page 12 
UAP requested such charges and put appellants on notice that it would seek such. Appellants' argument herein is not that it did not know the specific amounts of these charges; rather, appellants' claim is that they were not given adequate notice. As the issue of these charges was clearly pled and raised by UAP in both its complaint and summary judgment motion, appellants should have raised the affirmative defense of penalty at the earliest possible time after being notified by these pleadings. For these reasons, we find the trial court did not err when it found appellants had waived the affirmative defense of penalty, and appellants' second assignment of error is overruled.
 {¶ 17} Appellants argue in their third assignment of error that the trial court's determination that UAP had met its burden of mitigating its damages when the evidence established that UAP concealed the availability of the premises, was against the manifest weight of the evidence. Contract law acknowledges that mitigation, otherwise known as the doctrine of avoidable consequences, may justly place an injured party in as good a position had the contract not been breached at the least cost to the defaulting party. Frenchtown Square Partnership v.Lemstone, Inc., 99 Ohio St.3d 254, 2003-Ohio-3648, at ¶ 12. The Ohio Supreme Court decided in Frenchtown to apply the doctrine to commercial leases. Id., at ¶ 17-18. Therefore, it is established that, in Ohio, a lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. Id., at paragraph one of the syllabus. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court. Id., at paragraph two of the syllabus. The duty does not require extraordinary measures to avoid excessive damages. Provident Bank v.Barnhart (1982), 3 Ohio App.3d 316, 320. *Page 13 
 {¶ 18} In the present case, appellants claim that UAP's efforts to mitigate were not reasonable, citing to the following evidence: (1) photographs demonstrated UAP failed to put up a sign to re-rent the premises, other than a sign referring to "office space," when the premises in question was located solely in a retail shopping mall; and (2) photographs demonstrated UAP concealed the subject premises in such a manner as to preclude its re-rental by constructing a wall that "totally" concealed the presence of the subject premises. After reviewing the evidence cited by appellants, we disagree with their interpretation of the evidence.
 {¶ 19} With regard to the "office space" sign, we do not believe that merely because the space was advertised as "office space" detracts from the evident availability of the space for lease. It was evident that the space could not only be utilized as office space but also retail space, given its location in a retail shopping center. The "for lease" verbiage on the posters was sufficient to inform an interested party that the space was available. Susan Schaeff, general manager for the shopping center, testified that the "for lease" signs were posted within two weeks of appellants' departure. She stated the signs have the leasing agent's phone number on them. These efforts were reasonable.
 {¶ 20} With regard to the wall over appellants' former storefront constructed by UAP, we cannot find that UAP actively tried to conceal the availability of the storefront by constructing it. As noted by the trial court and magistrate, the wall was constructed for aesthetic purposes so that customers would not be subject to the eyesore of a darkened, empty storefront. On the whole, after viewing the photographs of the wall and its surroundings, we do not agree that the presence of the store was "totally" concealed. The wall juts out approximately three feet from the adjoining walls, and the temporary wall *Page 14 
ends substantially below the ceiling. Adding to the conspicuousness of the temporary wall and empty store are the two signs posted on each end of the temporary wall. Schaeff testified that a reasonable person would understand that the wall was hiding empty retail space, and we concur. We also note that the wall was not constructed until four to five months after appellants vacated the space.
 {¶ 21} Also significant to the mitigation issue is that the space is listed with three commercial real estate brokers, according to Johnson's testimony. Utilizing a reputable commercial real estate brokerage firm to advertise available space has been found to satisfy the duty to mitigate. See Thomas Kline Realty Co. v. Rogers, Lucas App. No. L-04-1361, 2005-Ohio-4876, at ¶ 14. Schaeff testified that one leasing company handles prospective tenants for medical and office space, one handles national and local retail space, and one handles national and corporate leasing. Schaeff contacted the primary leasing agent, CEG, within three days of appellants' departure. Further, Schaeff testified that the real estate broker has shown the space to eight prospective tenants, which further supports UAP's attempt to mitigate. Also supportive of UAP's reasonable mitigation attempt was that the space was offered to the prospective tenants for the same price for which appellants had leased it, and that price is negotiable. See id. (effort to mitigate sufficient when the advertised price of the space was the same price previously advertised for this space for the last seven years; the lessor is not required to offer the space "at any price" in order to demonstrate reasonable mitigation efforts). Johnson and Schaeff also testified that there was a 13-20 percent vacancy rate in the shopping center, including three spaces vacant in the same area as appellants' store, which Schaeff stated was indicative of the difficulty of leasing space that was in a hallway with no frontage. *Page 15 
Schaeff also testified that there are units in the mall that have been vacant longer than appellants' former space. She also stated that there is no business interest that would create a reason for keeping this space vacant. Schaeff testified that she has taken the same steps to lease this space that she has taken to lease other vacant units. For these reasons, we find the trial court's determination that UAP had met its burden of mitigating its damages was not against the manifest weight of the evidence, and appellants' third assignment of error is overruled.
 {¶ 22} Appellants argue in their fourth assignment of error that the trial court erred when it erroneously interpreted the lease with regard to the applicable CAM charge. We interpret a contract to carry out the intent of the parties. Lewis v. Mathes, 161 Ohio App.3d 1,2005-Ohio-1975, at ¶ 18, citing Aultman Hosp. Assn. v. Community Mut.Ins. Co. (1989), 46 Ohio St.3d 51, 53. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Where a contract is clear and unambiguous, its interpretation is a matter of law. Mathes, supra, at ¶ 19, citing Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322. Thus, where the terms in an existing contract are clear and unambiguous, the court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 246. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. Id.
 {¶ 23} Here, appellants contend that the lease does not set forth sufficient information from which to calculate the CAM charges; thus, the trial court should have *Page 16 
considered extrinsic evidence, in the form of the original lease proposal, to establish the agreed charges. Appellants assert that it is impossible to discern from the lease itself what the CAM charges will be, in that the lease sets forth items covered by the CAM expense but fails to cite any numbers or formulas to calculate the amount due. Therefore, appellants argue, because the CAM charges cannot be discerned from the four corners of the lease, the trial court should have looked to the lease proposal, which indicated that the CAM charges would be $6 per square foot.
 {¶ 24} In ruling on appellants' objections to the magistrate's decision with regard to the CAM charges issue, the trial court found that it had already determined in its prior ruling on appellants' motion for summary judgment that appellants could not rely upon the lease proposal to establish the CAM charges due under the lease. We agree. The lease signed by the parties contains an integration clause, which expressly indicates that the lease constituted the entire agreement between the parties and all prior agreements between the parties were void and of no effect. To permit appellants to utilize the lease proposal to prove the amount the parties intended to be the correct CAM charges would be directly contrary to the integration clause in the signed lease.
 {¶ 25} The trial court also found that the evidence produced at the hearing demonstrated that the CAM charges were underestimated in the lease proposal, and the pro-rata share was calculated correctly under the terms of the lease. On this point, the magistrate noted that the lease proposal provides that the figures set forth therein were estimates only and actual charges may vary. The magistrate also cited Johnson's testimony, and stated appellants failed to produce any evidence to contradict her calculation of the pro-rata charges. *Page 17 
 {¶ 26} We concur with the trial court and magistrate. Although it appears that part of Johnson's testimony regarding the CAM charges was at the beginning of the transcript, which is missing from the record, the available transcript indicates Johnson testified at trial that the CAM charges are based on a tenant's pro-rata share, which is a function of each unit's square footage compared to the total leasable area of the mall. Johnson admitted that a tenant with the same lease could not know what the tenant's CAM charges would be because the lease failed to indicate the amount, formula, or figures used to calculate such. Johnson knew that appellants believed the CAM charges should be $6 per square foot based on the lease proposal, and Johnson testified that, at one point, UAP offered to reduce the CAM charges to $6 per square foot because the leasing agent believed that there had been an error in the CAM calculations in the lease proposal. Johnson stated that UAP made the offer out of fairness and "reasonableness." An amendment to the contract was prepared to make the CAM charges change, and it was presented to Young at least three times, but he refused to sign the amendment. It was made clear to Young that if he did not sign the amendment, the offer would be revoked. Young stated he did not sign the amendment because he did not think the amendment was conclusive as to whether his CAM charges would be $6 per square foot.
 {¶ 27} However, regardless of whether the contract contained the specific pro-rata CAM charges formula, Johnson testified that the CAM charges charged to appellants were accurate and were calculated correctly under the parameters set forth in the lease. Further, Young specifically admitted that the lease proposal, upon which he relies, indicated that the CAM charges in the lease proposal were estimated and the actual charges may vary. Appellants failed to present any testimony or evidence that the CAM *Page 18 
charges calculated by UAP were incorrect, and because of the integration clause, appellants' sole contention that the lease proposal should control, must be rejected. For these reasons, we can find no error in the trial court's and magistrate's determinations that the CAM charges were properly calculated for purposes of computing the total damages. Therefore, appellants' fourth assignment of error is overruled.
 {¶ 28} Accordingly, appellants' first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and KLATT, JJ., concur.