[Cite as *T-Building Co. v. HVL, Inc.*, 2013-Ohio-933.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98244

---

## THE T-BUILDING COMPANY

PLAINTIFF-APPELLEE

vs.

## HVL, INC., ET AL.

DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-748701

**BEFORE:** Celebrezze, P.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 14, 2013

**ATTORNEY FOR APPELLANTS**

John W. Gold
Robert Zelvy & Associates
171 E. Washington Row
Sandusky, Ohio   44870


**ATTORNEYS FOR APPELLEE**

Mark Fusco
Patricia F. Weisberg
Walter & Haverfield, L.L.P.
1301 E. Ninth Street
Suite 3500
Cleveland, Ohio   44114

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendants-appellants, HVL, Inc., Verona Enterprises, Inc., and E&R Beverage, Inc. (collectively "appellants"), appeal the judgment of the Cuyahoga County Court of Common Pleas in favor of plaintiff-appellee, The T-Building Company (hereinafter "plaintiff"), in the amount of $200,930.02. After careful review of the record and relevant case law, we affirm the judgment of the trial court.

{¶2} On February 15, 2011, plaintiff filed a complaint against appellants for breach of contract and an action on an account stemming from a commercial lease agreement entered into by the parties on December 22, 2008. On April 29, 2011, appellants filed a counterclaim alleging breach of contract, breach of the covenants of good faith and fair dealing, and breach of the covenants of quiet enjoyment and habitability. Specifically, appellants' counterclaim alleged that plaintiff failed to meet its obligations under the lease, particularly the negotiated provisions requiring plaintiff to exclusively manage the building's parking lot and common areas, resulting in damages and lost profits.

{¶3} The case was assigned to the commercial docket, and trial was scheduled to begin on December 14, 2011. An affirmative expert report deadline was scheduled for September 1, 2011, with responsive reports due November 1, 2011. However, appellants did not produce a completed expert report prior to the September 1, 2011 deadline. Accordingly, plaintiff filed a motion in limine on November 22, 2011, seeking the exclusion of all expert testimony and evidence sought to be introduced by appellants at

trial. On December 6, 2011, appellants' filed a combined motion for continuance and brief in opposition to plaintiff's motion in limine.

{¶4} Rather than excluding appellants' ability to produce an expert report entirely, the trial court, pursuant to Civ.R. 42(B), ordered in a journal entry dated December 12, 2011, that "trial will proceed as scheduled on plaintiff's causes of action and on the [appellants'] counterclaim for breach only. In the event of a verdict in the [appellants'] favor on their counterclaim for breach, then a later trial will be held on the question of damages."

{¶5} A bench trial on plaintiff's claims and the duty, breach, and causation elements of appellants' counterclaim commenced on December 14, 2011. The following facts were adduced at trial.

{¶6} On November 17, 2008, HVL, Inc. was organized by Malek E. Abboud for the purpose of operating a liquor establishment in Cleveland Heights, Ohio. In late 2008, Malek negotiated the purchase of a liquor contract owned by Verona Enterprises, which was operating in Severance Center at 3622 Mayfield Road, for $240,000. While preliminary discussions with Verona Enterprises were underway, Malek began scouting for potential venues to relocate the business with the assistance of his uncle, Malek F. Abboud (hereinafter "Uncle Abboud"). Malek intended to move the business out of Severance Center because he preferred a street-front location.

{¶7} During the course of Malek's search for an ideal location, he became interested in a space located at 3907-09 Mayfield Road in Cleveland Heights, Ohio. The building was owned by plaintiff and managed by Richard Hart and his assistant property

manager, Michelle Feher. After visiting the property, Malek considered renting the space from plaintiff, but was concerned that there was not enough parking for potential customers. Uncle Abboud recommended to Malek that if HVL decided to rent the building, the lease should include an agreement from plaintiff to dedicate at least ten spaces against the wall of the building in the west lot as parking for customers of the liquor store only.

{¶8} Following negotiations, the parties entered into a lease agreement on December 22, 2008, for a five-year term beginning March 1, 2009. Appellants signed the lease jointly as the tenant. The contract required rental payments of $5,000 per month for the first three years and $5,500 per month for the last two years. Section 2.05 of the lease imposed a late charge of $30 per day for all payments not made when due. The contract also obligated the tenant to pay certain expenses, including the cost of "maintaining the HVAC systems, and water, gas and electricity."

{¶9} Although the majority of the lease was in a form proposed by plaintiff without alteration by appellants, Malek did negotiate specific provisions pertaining to parking. Unable to persuade plaintiff to agree to set aside parking spaces for liquor store customers only, Malek proposed, and plaintiff agreed to, the following provisions at Section 5.02 of the lease:

> Owner agrees to manage the parking arrangements for the property so that tenant shall have adequate parking for tenant's customers.

> Owner shall designate ten parking spaces adjacent to the building as "twenty minute parking."

**{¶10}** At trial, Malek testified that throughout appellants' occupancy in plaintiff's building, the liquor store continuously suffered from plaintiff's inability to adequately provide appellants' customers with parking as contemplated in the parties' lease agreement. He claimed that "hundreds" of customers per week told him that they had difficulty finding a parking spot, particularly on Thursdays, Fridays, and Saturdays. Malek testified that he complained to plaintiff on a "near weekly" basis about the lack of parking, but plaintiff's response seemed insufficient and the problems continued. In particular, Malek objected to plaintiff's unwillingness to have other tenants' vehicles towed from the premises.

**{¶11}** Malek testified that plaintiff's failure to manage the parking was the reason "liquor sales weren't at what they were supposed to be." Thus, Malek contended that plaintiff's failure to fulfill its own obligations under the lease agreement forced him, on behalf of appellants, to sell the liquor agency to Dave's Supermarket for $520,000 and close the business. Appellants subsequently left the premises on December 31, 2010, and paid rent only through January 2011.

**{¶12}** At the conclusion of trial, the court entered judgment in favor of plaintiff and against appellants in the amount of $200,930.02. Additionally, the trial court found in favor of plaintiff on appellants' counterclaim and awarded plaintiff its legal fees in the amount of $24,000.

**{¶13}** Appellants bring this timely appeal, raising five assignments of error for review.

Law and Analysis

## I. Abuse of Discretion

{¶14} In their first assignment of error, appellants argue that the trial court abused its discretion when it denied their motion for continuance and excluded their expert witness report where no previous continuances or discovery extensions had been granted.

{¶15} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. [Therefore, an] appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶16} The Ohio Supreme Court has stated that the following facts can be considered when determining whether the trial court should have granted a motion for a continuance: "the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum*, 53 Ohio St.3d 107, 115, 559 N.E.2d 710 (1990).

{¶17} In the instant case, the parties appeared at a pretrial conference in March 2011 and agreed to all discovery dates, including the deadline for the submission of expert reports. Thereafter, appellants filed their motion for continuance on December 6, 2011, just eight days before trial was scheduled to begin. Appellants' motion for continuance was based solely on their own inability to secure an expert report from their

damages expert in compliance with Loc.R. 21.1 and the trial court's pretrial order requiring the parties to submit affirmative expert reports on or before September 1, 2011. Given the timing and basis for appellants' motion, this court will not disturb the decision of the trial court. *See Welch v. Ziccarelli*, 11th Dist. No. 2006-L-229, 2007-Ohio-4374.

{¶18} Furthermore, we find no merit to appellants' contention that the trial court's decision to deny the motion for continuance, coupled with the bifurcation order, precluded them from presenting evidence in support of their counterclaim and defenses. As discussed further in appellants' fourth assignment of error, plaintiff's witnesses provided sufficient testimony at trial demonstrating their compliance with the terms of the parties' lease agreement, including plaintiff's duty to provide appellants' customers with adequate parking. Any expert testimony concerning appellants' alleged lost profits would have done little to substantiate their position that plaintiff breached its duties under the lease agreement. As contemplated by the trial court's decision to bifurcate the case, such evidence would have only been relevant to the element of damages had the testimony presented at trial not sufficiently evidenced plaintiff's performance under the contract.

{¶19} Appellants' first assignment of error is overruled.

## II. Damages Counterclaim

{¶20} In their second assignment of error, appellants argue that the trial court committed reversible error when it bifurcated the damages portion of their counterclaim, yet cited lack of damages as a basis for finding in favor of the plaintiff. In their third assignment of error, appellants argue that the trial court erred when it made a factual

finding pertaining to their alleged financial damages in the absence of testimony by an expert possessing specialized knowledge of accounting procedures and business valuation, in violation of Evid.R. 702. For the purposes of judicial clarity, we consider appellants' second and third assignments of error together.

{¶21} At trial, Malek testified that before opening the store, his accountant projected sales in 2010 at $528,000 and a taxable income of $61,758. He then testified that the store's 2010 tax return showed actual receipts of $476,000 and an actual taxable income of $61,071. Specifically, Malek attempted to demonstrate that the lack of parking at the store caused the company to lose substantial profits. However, on considering Malek's testimony, the trial court determined that the difference in appellants' projected 2010 sales and their 2010 actual receipts was insubstantial. Accordingly, the trial court stated, "the fact that the store's income was almost exactly what he projected it to be supports an inference that his customers found adequate parking and made their way into the store." Based on the trial court's statements concerning their lack of damages, appellants now argue that the trial court erred in relying on Malek's "less than credible, non-expert" testimony because he "was unable to articulate HVL's actual lost profits and damages with reasonable certainty."

{¶22} Initially, we note that the trial court's decision to render a judgment in favor of plaintiff was based on the court's determination that plaintiff complied with its obligations under the lease agreement. Although the trial court made a brief statement concerning appellants' lack of damages in response to Malek's testimony, we are unable to concluded that such discussion constituted reversible error.

**{¶23}** Moreover, the doctrine of invited error operates as a complete bar to appellants' second and third assignments of error. Pursuant to the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced the court to make." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 409, 2002-Ohio-4849, 775 N.E.2d 517. Here, the record reflects that the evidence relating to appellants' 2010 projected sales and actual receipts was introduced by appellants during the direct examination of Malek. As a result, appellants placed the issue of damages before the trial court and cannot now complain that the court erred in addressing Malek's testimony.

**{¶24}** Appellants' second and third assignments of error are overruled.

### III. Manifest Weight

**{¶25}** In their fourth assignment of error, appellants argue that the judgment of the trial court was against the manifest weight of the evidence and unsupported by any competent, credible evidence. We disagree.

**{¶26}** A reviewing court will not reverse a trial court's judgment in a civil action unless it is against the manifest weight of the evidence. A trial court's judgment is not against the manifest weight of the evidence so long as some competent and credible evidence supports it. *See, e.g., C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. To determine whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not reweigh the evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). Under this highly deferential standard of review, this court does not decide whether we would have come to the same conclusion as the trial court. *Amsbary v.*

*Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶ 11 (4th Dist.). Instead, we must uphold the judgment so long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions." *Id*., citing *Bugg v. Fancher*, 4th Dist. No. 06CA12, 2007-Ohio-2019, ¶ 9. Moreover, we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. *See, e.g., Seasons Coal* at 80.

{¶27} In Ohio, commercial leases are governed primarily by contract law. *Kostoglou v. Midkiff Ents*., 7th Dist. No. 01 C.A. 23, 2001 Ohio App. LEXIS 5143 (Nov. 6, 2001). "[T]o prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the plaintiff." *Samadder v. DMF of Ohio, Inc*., 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶ 27 (10th Dist.), citing *Powell v. Grant Med. Ctr*., 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874, ¶ 27 (10th Dist.).

{¶28} In this case, the existence of the contract is admitted. Additionally, there is no question that appellants failed to fulfill their obligation to pay rent, utilities, and late fees, causing damages to plaintiff. Thus, the only element in dispute is whether plaintiff failed to perform its own obligations under the lease agreement.

{¶29} Here, appellants contend that the record is devoid of competent, credible evidence supporting the trial court's findings that plaintiff performed its duties as required under the following provisions of the lease agreement:

> Owner agrees to manage the parking arrangements for the property so that tenant shall have adequate parking for tenant's customers.

Owner shall designate ten parking spaces adjacent to the building as "twenty minute parking."

**{¶30}** Based on our review of the transcript in this matter, we find that there was competent, credible evidence to support the trial court's judgment in favor of plaintiff. With respect to plaintiff's obligation to "manage" the parking arrangements, plaintiff's property manager, Michelle Feher, testified that she and her staff worked diligently to provide appellants' customers with adequate parking. Feher testified that over the course of appellants' occupancy, her staff investigated and addressed numerous complaints raised by appellants. Specifically, Feher testified that her staff frequently monitored the parking situation at appellants' liquor store and, when necessary, sent notices to the building's other tenants to remind them of the importance of having available customer parking and the need for tenant's employees to park behind the building or across the street.

**{¶31}** Furthermore, Feher testified that five "twenty minute parking only" signs were placed on the west exterior of the building once appellants opened for business. The record reflects that each sign designated two parking spaces as "twenty minute parking" spaces, in compliance with the lease agreement's "ten space" requirement. Plaintiff's Exhibit 7 shows the signs were ordered January 20, 2009, and paid for in February. Additionally, in 2010, plaintiff purchased and posted six more "twenty minute parking only" signs.

**{¶32}** We recognize that appellants challenge the accuracy of Feher's testimony, however, the trial court, as the trier of fact, was in the best position to weigh the

credibility of the witnesses and was free to give more weight to Feher's testimony. Accordingly, we conclude the trial court's judgment is supported by competent, credible evidence, and therefore is not against the manifest weight of the evidence.

{¶33} Appellants' fourth assignment of error is overruled.

IV.    Mitigation of Damages

{¶34} In their fifth assignment of error, appellants argue that there was no competent, credible evidence to support the trial court's finding that plaintiff fulfilled its duty to mitigate damages.

{¶35} With regard to commercial leases, Ohio courts have routinely held that a landlord has an implied duty to mitigate its damages in the event a tenant breaches the lease agreement and abandons the leasehold. *See Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417, ¶ 16. The duty to mitigate, when it applies, requires an injured party to make reasonable efforts, not extraordinary ones, to limit the damages that result from the breach. *UAP-Columbus JV326132 v. O. Valeria Stores, Inc.*, 10th Dist. No. 07AP-614, 2008-Ohio-588, ¶ 17. Because failure to mitigate is an affirmative defense, the burden to prove it lies with the party raising it. *Baird v. Crop Prod. Servs.*, 12th Dist. Nos. CA2011-03-003 and CA2011-04-005, 2012-Ohio-4022, ¶ 43. Thus, in order to succeed on its affirmative defense of failure to mitigate, appellants were required to prove that plaintiff failed to take reasonable efforts to limit the damages it incurred as a result of appellants' default.

{¶36} Here, appellants failed to meet their burden. Contrary to appellants' position, the testimony adduced at trial demonstrated that plaintiff made reasonable

efforts to relet the premises, and therefore attempted to mitigate damages. Richard Hart testified that plaintiff sent out "hundreds" of marketing flyers to various brokers informing them of the availability of the space. Additionally, Hart testified that he personally called several brokers in the area and met with those who expressed interest in the property. Although self serving, the trial court was in the best position to weigh the credibility of Hart's testimony, and appellants failed to present any evidence to dispute the reasonableness of plaintiff's efforts. Thus, we find no error in the trial court's determination on the issue of mitigation of damages.

{¶37} Appellants also argue, without any citation to authority, that the trial court should have excluded Hart's testimony concerning mitigation because evidence of mitigation was not produced during discovery. However, because appellants did not raise the alleged discovery dispute, as required by Civ.R. 37, there is nothing in the record to support appellants' position that information was sought during discovery and not produced. Accordingly, there is nothing for this court to review with respect to appellants' non-disclosure allegations.

{¶38} Appellants fifth assignment of error is overruled.

{¶39} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA A. BLACKMON, J., CONCUR