[Cite as *Naiman Richmond Properties, Ltd. v. Brand Castle, L.L.C.*, 2024-Ohio-2910.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

NAIMAN RICHMOND PROPERTIES,
LTD.,                                                    :

      Plaintiff-Appellee,                     :

      v.                                              :

BRAND CASTLE, LLC,                             :

      Defendant-Appellant.              :

No. 113480

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  August 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-967552

---

### *Appearances:*

Singerman, Mills, Desberg & Kauntz Co., L.P.A., and
Michael R. Stavnicky, *for appellee.*

Roetzel & Andress, LPA, E. Mark Young, and Emily K.
Anglewicz, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

### I. Factual and Procedural History

{¶ 1} On August 17, 2022, Naiman Richmond Properties, Ltd. ("Landlord")
filed a complaint naming Brand Castle, LLC ("Tenant") as the sole defendant.  The

complaint contained claims for breach of contract, unjust enrichment, and detrimental reliance.

{¶ 2} The complaint alleged that on May 12, 2022, the parties entered into a lease agreement for a commercial space sized at approximately 38,400 square feet and located at 26050 Richmond Road in Bedford Heights, Ohio ("the property" or "the premises"). The lease contemplated that Tenant would move in on August 1, 2022.

{¶ 3} The complaint alleged that as agreed upon in the lease, Landlord expended "tens of thousands of expenses in preparing the Property for [Tenant], including without limitation tearing out offices, rebuilding the loading docks and removing the former tenant." The complaint further alleged that Tenant breached the lease in failing to take possession of the property and failing to pay "all amounts due and owing, including July and August 2022 rent and charges."

{¶ 4} Tenant answered and admitted to entering into the lease, but responded that Landlord's President, Jack Naiman ("Naiman"), and Tenant's founder, Jimmy Zeilinger ("Zeilinger"), entered into a verbal agreement to modify the lease. The answer alleged that Landlord and Tenant, through their representatives, agreed that Tenant need not pay the rent for July and August 2022. Tenant also answered that it did not receive keys to the premises at any time.

{¶ 5} The parties engaged in discovery and on March 21, 2023, Landlord filed a motion for summary judgment, asking for judgment in the amount of $402,871.86. This amount was broken down as follows: $265,595.86 in costs

associated with preparing the premises for a replacement tenant; $31,196 in brokerage fees and costs associated with finding a replacement tenant; and $106,080 for unpaid rent and other charges while the premises was vacant from July to December 2022, when the replacement tenant took possession of the property.

{¶ 6} In its brief in opposition, filed on April 21, 2023, Tenant detailed that at the time the lease was executed, it was agreed that the move-in date would be on August 1, 2022. Tenant alleged, however, that on July 25, 2022, Landlord called Zeilinger and explained that the property would not be ready on August 1, 2022, but did expect it to be available "approximately four (4) days later." Tenant, after relaying this information to its internal team, actually determined that it no longer needed the property. Representatives for the Landlord and Tenant scheduled a meeting to discuss this.

{¶ 7} On July 26, 2022, Naiman and Zeilinger, along with Fred Lindsay, the director of operations for Tenant, met and allegedly reached an agreement that Tenant would not take possession of the property. Apparently, "Naiman believed that [Landlord] could readily relet [the property]" and as a result, the parties reached an agreement acknowledging that Tenant would "pay a breakage fee of six (6) months unless [Landlord] relet [the property] sooner, as [Landlord] believed that [the property] could be relet within approximately three (3) months."

{¶ 8} On July 29, 2022, however, Naiman sent an email to Zeilinger noting that the property would be ready for his occupancy on August 1, 2022, as agreed in

the original lease, despite the alleged oral agreement that took place on July 26, 2022. In his affidavit, Zeilinger averred that Landlord never provided Tenant with keys and that Tenant never, at any point, took possession of the property.

{¶ 9} The parties began filing motions in preparation for trial in June 2023, and the parties attended a final pretrial on June 28, 2023. On July 6, 2023, the trial court entered a judgment entry partially granting Landlord's motion for summary judgment on the issue of liability. The trial court found that there was a genuine issue of material fact as to damages and set the matter for a bench trial on July 17, 2023.

{¶ 10} After the bench trial occurred, the trial court ordered the parties to file affidavits for attorney fees and allowing Tenant to "file a supplementary brief with further argument and any controlling legal authority as to the issues raised in the hearing." Landlord was given two weeks to respond. Both parties filed affidavits, and Tenant raised issues concerning the duty to mitigate damages.

{¶ 11} On October 13, 2023, the trial court awarded Landlord damages in the amount of $402,871.86, using the calculations set forth in Landlord's original motion for summary judgment. Landlord was ordered to submit an affidavit regarding attorney fees for the court's review.

{¶ 12} The court ultimately awarded $53,520.09 in attorney fees, and Tenant brought the instant appeal, assigning two errors for our review:

> I. The trial court erred as a matter of law by awarding damages not authorized by the terms of the parties' lease.

II. The trial court's award of $265,595.86 in damages — the cost of renovations performed by plaintiff as consideration for a more lucrative lease agreement with a replacement tenant — was excessive and constitutes an abuse of discretion.

## II. Law and Analysis

### A. Jurisdiction and Timeliness of Appeal

{¶ 13} We first address the timeliness of the appeal and whether we have jurisdiction to review it. Landlord argues that Tenant's appeal was not timely because they did not appeal from the order awarding damages, journalized on October 16, 2023, even though the order specified that attorney fees were still outstanding. Tenant responds that the order was not final and appealable until the attorney fees issue was decided on December 15, 2023.

{¶ 14} Our appellate jurisdiction is limited to reviewing orders that are both final and appealable. Ohio Const., art. IV, § 3(B)(2); R.C. 2505.02 and 2505.03. A partial final order is not appealable pursuant to Civ.R. 54(B) if pending, unresolved issues "touch upon the very same facts, legal issues and circumstances" as the resolved claims. *Altenheim v. Januszewski*, 2018-Ohio-1395, ¶ 3-7, 10-13 (8th Dist.). When the "resolved" issues and the issues that remain are intertwined, a piecemeal appeal would not serve the interests of judicial economy. *Rae-Ann Suburban, Inc. v. Wolfe*, 2019-Ohio-1451, ¶ 18 (8th Dist.).

{¶ 15} Here, the trial court explicitly noted in its October 16, 2023 order that the issue of attorney fees was still outstanding and ordered additional filings from the parties. "Where a prayer for relief requests a particular type of damages and the

court fails to specifically adjudicate that aspect of the damages request, no final appealable order exists." *Rae-Ann* at ¶ 20, citing *Adkins v. Bratcher*, 2007-Ohio-3587, ¶ 1, 11-12 (4th Dist.).

{¶ 16} Accordingly, we conclude that the appeal from the December 15, 2023 order was the final, appealable order from which Tenant should have, and indeed did, appeal from. We therefore have jurisdiction to hear the instant appeal and turn to the assigned errors.

## B. Damages Within the Lease Terms

{¶ 17} In the first assignment of error, Tenant argues that the trial court erred in awarding damages "not authorized by the lease." Specifically, the Tenant argues that the trial court erred in awarding damages for the "renovations" made to the property to accommodate the replacement tenant, in the amount of $265,595.86. Tenant does not dispute any of the other damages.

{¶ 18} In the instant matter, the parties agreed to damages under the terms of the lease agreement. Leases are contracts and therefore subject to the traditional rules that govern contract interpretation. *Heritage Court L.L.C. v. Merritt*, 2010-Ohio-1711, ¶ 14 (3d Dist.). Generally, the intent of the parties to a contract lies solely within the language of the agreement. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635 (1992). The construction of a written contract is a matter of law that is reviewed de novo. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 (1978). "When the terms of the contract are unambiguous and clear on their face, the court does not need to go beyond the plain language of the contract to determine

the rights and obligations of the parties and the court must give effect to the contract's express terms." *Digioia Bros. Excavating v. Cleveland*, 135 Ohio App.3d 436, 446 (8th Dist. 1999).

{¶ 19} The pertinent portion of the lease agreement in the instant matter provides:

> Landlord's damages in the event of Tenant's default under this Lease shall include, in addition to any other damages set forth in this Lease or permitted at law or in equity, all of Landlord's expenses incurred with respect to such default including, (i) attorneys' fees, commissions, rental concessions to new tenants; and (ii) the cost of any repairs, renovations, alterations or other modifications of the Premises.

{¶ 20} Landlord and Tenant both appear to argue that the language is unambiguous but offer differing interpretations of the plain text of the lease agreement.

{¶ 21} Tenant argues that the plain language of the lease agreement does not contemplate the $265,595.85 in "renovation" costs for the new tenant, arguing that sections (i) and (ii) are specifically divided and (i) appears to pertain to expenses incurred with respect to the default, and (ii) appears to address expenses related to modifications that Landlord made to the premises to accommodate Tenant. We note that neither of these interpretations are specifically delineated in the "plain text" of the lease agreement because neither (i) nor (ii) have limiting language that limits the damages to certain conditions precedent. Additionally, Tenant argues that the absence of the qualifier "for new tenants" after subsection (ii) demonstrates that it is not liable for the renovations made for replacement tenants.

{¶ 22} Landlord, by contrast, argues that the plain language of the contract is unambiguous and plainly accounts for "any other damages set forth in this Lease or permitted at law or in equity" as well as "*all* of Landlord's expenses incurred with respect to such default" which includes damages set forth under subsections (i) "*and*" (ii).

{¶ 23} We agree with Landlord's interpretation that the lease language is unambiguous and the damages are clearly elucidated in the plain text of the agreement. The lease agreement plainly contemplates that Tenant shall be liable for *all* damages stemming from the default with respect to the default. There is no limiting language, and, indeed, the agreement even says "including" and lists various scenarios but does not limit damages to just the scenarios listed. We also note that Tenant's argument dividing subsections (i) and (ii) fails because "rental concessions to new tenants," as contemplated in subsection (i), have been ordinarily defined to mean an adjustment, compromise, or enticement that a landlord makes to attract tenants to a space. *See, e.g.,* Apartments.com, *What is a Rent Concession? A Landlord's Guide* (2020), https://www.apartments.com/rental-manager/resources/leases/what-are-rent-concessions-guide-landlords (accessed June 25, 2024) [https://perma.cc/NP5G-LLX5]. These rental concessions are clearly included under "Landlord's expenses with respect to such default."

{¶ 24} Principles of contract interpretation preclude us from rewriting a contract by adding language or terms that the parties omitted. *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.*, 2013-Ohio-1800, ¶ 23 (8th Dist.), citing

*Inland Refuse Transfer Co. v. Browning-Ferris Industries, Inc.*, 15 Ohio St.3d 321, 322 (1984); *See also Blosser v. Enderlin,* 113 Ohio St. 121, 129 (1925) ("[I]n construing a written instrument there can be no intendment or implication which is inconsistent with an express provision thereof."). Thus, based on the plain and ordinary meaning of the language, Tenant agreed to pay *all* damages stemming from their default, which includes, but is not limited to, renovations and concessions to new tenants.

{¶ 25} Neither party disputes that the agreement was willingly entered into by the parties, nor are any arguments surrounding the unconscionability of the contract raised. At bottom, the parties both agreed to these terms and as the court, we must give effect to the contract's express terms and find that the parties are bound by the terms they willingly entered into.

{¶ 26} We overrule Tenant's first assignment of error.

### C. Excessive/Unreasonable Damages

{¶ 27} In their second assignment of error, Tenant appears to argue that if we do not entertain its first assignment of error, we could at least consider that the damages awarded for the "renovations" and/or rental concessions are excessive or unreasonable. Because we overruled the first assignment of error, we proceed to review the second assignment of error.

{¶ 28} Generally, "[m]oney damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *Schulke Radio Prods., Ltd. v. Midwestern*

*Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983). Commercial leases, however, carry a duty to mitigate damages caused by breach of a commercial lease stemming from abandonment of the leasehold. *Frenchtown Square Partnership v. Lemstone, Inc.*, 2003-Ohio-3648, ¶ 21. This duty to mitigate arises in all commercial leases, barring contrary contract provisions. *Apple Ohio, LLC v. Rose Italian Kitchen Solon, LLC*, 2023-Ohio-2880, ¶ 13 (8th Dist.), citing *id.* at ¶ 18, 20. Moreover, the lessor's efforts to mitigate "must be reasonable, and the reasonableness should be determined by the trial court." *Frenchtown* at ¶ 21. "A reviewing court generally will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion." *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996). An abuse of discretion occurs if the court's attitude in reaching its decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion also occurs if a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 29} The duty to mitigate requires an injured party to make reasonable efforts, not extraordinary ones, to limit the damages that result from the breach. *UAP-Columbus JV326132 v. O. Valeria Stores, Inc.*, 2008-Ohio-588, ¶ 17 (10th Dist.). Because failure to mitigate is an affirmative defense, the burden to prove it lies with the party raising it. *Baird v. Crop Prod. Servs.*, 2012-Ohio-4022, ¶ 43 (12th Dist.). Thus, to succeed on its affirmative defense of failure to mitigate, Tenant was

required to prove that Landlord failed to take reasonable efforts to limit the damages incurred as a result of Tenant's default.

{¶ 30} Tenant argues that the $265,595.86 in "custom upgrades" for the replacement tenant places Landlord in a better position than it would have been had Tenant performed. Tenant states that these upgrades "paved the way for [Landlord] to secure a lease deal that was substantially more lucrative than the [Tenant] deal would have been." Tenant notes that the replacement tenant leased more square feet for a longer period of time than the Tenant agreement provided for. This, however, does not truly go to Tenant's burden to prove that Landlord *failed* to take reasonable efforts to limit damages. Tenant seemingly argues that these damages should be "offset" by the supposedly "better deal" that Landlord is getting from the new tenant.

{¶ 31} Tenant also refers this court to *New Mkt. Acquisitions v. Powerhouse Gym*, 212 F.Supp.2d 763, 778 (S.D.Ohio 2002), where the court found that a landlord's modifications to a property for a new tenant were not recoverable after the current tenant breached the lease. We, however, find that in so concluding, the *New Mkt.* Court specifically found that "there is no basis for holding Defendants liable for" the modifications to the property. Unlike in *New Mkt.*, there is a basis for holding Tenant liable for the concessions made to entice and accommodate the new tenant: they agreed to as much in the lease agreement, as we found in our analysis of the first assignment of error.

{¶ 32} Landlord refers us to *Strip Delaware, LLC v. Landry's Restaurants, Inc.,* 2011-Ohio-4075, ¶ 26 (5th Dist.), where the court noted that Landlord getting a better deal from a new tenant "should not benefit the prior tenant following a breach."

{¶ 33} Based on the foregoing, we cannot say that the trial court's determination that $265,595.86 was owed to Landlord was unreasonable so as to constitute an abuse of discretion. The decision is supported by evidence in the record that resulted from Tenant's last-minute breach of the agreement, leaving Landlord in a position where it was required to relet the premises, a large commercial space, to a new tenant.

{¶ 34} We therefore overrule Tenant's second assignment of error.

### III. Conclusion

{¶ 35} The plain meaning of the lease agreement demonstrates that Landlord and Tenant agreed to the specific damages awarded by the trial court. Moreover, the trial court was not unreasonable in awarding $265,595.86 where Tenant did not demonstrate that Landlord breached its duty to mitigate damages.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MARY J. BOYLE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR